UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---

IN RE:
ALEX HERMOSILLA,
        DEBTOR.

Chapter 7
Case No. 05-11048-WCH

---

HILDA CRISTINA HERMOSILLA,
        PLAINTIFF,

v.

ALEX HERMOSILLA,
        DEFENDANT.

Adversary Proceeding
No. 05-1360

---

**MEMORANDUM OF DECISION**

## I. INTRODUCTION

The matter before the Court is Count III of the Amended Complaint filed by the Plaintiff Hilda Cristina Hermosilla ("Cristina") through which she seeks to except from discharge pursuant to 11 U.S.C. § 523(a)(6) an unliquidated personal injury claim owed to her by Alex Hermosilla (the "Debtor" or "Alex"), her former spouse, arising from an incident of domestic violence.[1] On March 17, 2010, just prior to the commencement of trial, both parties asserted that they were entitled to judgment as a matter of law based upon the undisputed material facts of record. After an extended

---

[1] Although I lack jurisdiction to liquidate Cristina's unliquidated personal injury claim, *see* 28 U.S.C. § 157(b)(5), I may nonetheless determine whether it would survive the Debtor's discharge in bankruptcy if Cristina successfully proved that her claim was for a willful and malicious injury. *See Grogan v. Garner*, 498 U.S. 279, 290 (1991) ("[N]ondischargeability [is] a question of federal law independent of the issue of the validity of the underlying claim.").

1

colloquy with the parties, I took the matter under advisement on stipulated facts, construing their arguments as cross-motions for summary judgment. For the reasons set forth below, I will enter judgment in favor of Cristina against the Debtor and order Debtor's counsel, Attorney David G. Baker ("Attorney Baker"), to show cause as to why he should not be sanctioned for advancing defenses not warranted by fact or law in violation of Fed. R. Bankr. P. 9011.

## II. BACKGROUND[2]

In the Amended Joint Pre-Trial Statement filed March 11, 2010, the parties listed, *inter alia*, the following facts as admitted and requiring no proof:

> Cristina and the Debtor were married on Marcy [sic] 15, 2001. The parties had no children during their marriage.
>
> The parties lived together until July 20, 2003, when Alex assaulted and battered Cristina [(the "Assault")].
>
> During the above-referenced assault and battery, Alex purposefully struck Cristina with great force, grabbed Cristina by the throat and struck her head repeatedly against the interior wall of the premises at which Alex and Cristina then resided and threw Cristina with such force onto a table that the table was caused to be broken.
>
> At the time Alex committed the physical acts referenced above, he intended to cause and did cause Cristina physical harm and pain and emotional fright and did cause Cristina such physical harm that she was caused to seek and obtain medical care for her injuries and did cause her such emotional harm that she was cased [sic] to seek and obtain care for her emotion condition.
>
> Cristina became indebted for services rendered to her for her physical and emotional injuries and for which Alex is liable to Cristina together with the physical and emotional damages Alex caused Cristina.
>
> On July 21, 2003 a Criminal Complaint issued out of the Lynn District Court against Alex for assault and battery with a dangerous weapon and assault and battery as a

---

[2] I take judicial notice of the docket in the adversary proceeding, as well as that of the main case pending before this Court. *See Rodi v. Southern New England School of Law*, 389 F.3d 5, 17-19 (1st Cir. 2004) (citations omitted).

result of Alex's beating of Cristina on July 20, 2003.

On August 5, 2004, Alex responded to the charges and admitted sufficient facts to support a finding of guilt on the charges of assault and battery with a dangerous weapon and assault and battery as a result of the his [sic] beating of Cristina, and a guilty finding entered on those findings on August 5, 2004 and Alex received, inter alia, a suspended sentence of nine (9) months in the Essex County House of Correction . . . .

* * *

On or about August 18, 2003, Cristina filed a Divorce Complaint against Alex in the Probate and Family Court Department of Essex Court Superior [(the "Probate Court")] . . . .[3]

The Probate Court entered a judgment of divorce nisi on September 15, 2005, which in the absence of an appeal, became final on December 14, 2005.[4] On February 22, 2007, however, the Probate Court entered a Modification Judgment incorporating a stipulation of the parties (the "Stipulation") which amended the September 15, 2005 judgment. The Stipulation provided, *inter alia*, that Cristina waived all future claims to alimony and spousal support and that both she and the Debtor waived "any and all claims which could have been or were presented in these divorce proceedings and post divorce proceedings in this Court (including attorney's fees) and all contempt proceedings . . . ."[5]

Prior to entry of any judgment in the Probate Court, the Debtor filed a voluntary Chapter 7 petition on February 16, 2005. Although originally represented by other counsel, since May, 2005, Attorney Baker has appeared on behalf of the Debtor in both the main case and this adversary

---

[3] Amended Joint Pre-Trial Statement, Docket No. 89 (JPTS), at ¶¶ 2:1-7, 10 (citations omitted).

[4] *Id.* at ¶ 2:17.

[5] Defendant's Ex. 1.

3

proceeding. On May 20, 2005, Cristina commenced the present adversary proceeding seeking to except from discharge certain unliquidated debts owed to her by the Debtor arising from the divorce proceedings pursuant to 11 U.S.C. §§ 523(a)(5) and (a)(15) and the Assault pursuant to 11 U.S.C. § 523(a)(6). As she had not yet received any judgments on account of these unliquidated claims, and indeed, had been barred from commencing her personal injury action by the automatic stay, her complaint was vague and did not describe the nature of the injury she sustained.

On January 13, 2010, I entered a final pre-trial order (the "Pre-Trial Order") scheduling the matter for trial.[6] The Pre-Trial Order directed the parties to file a Joint Pre-Trial Statement which included a statement of admitted facts that required no proof and expressly stated that the Joint Pre-Trial Statement "shall supercede the pleadings and govern the course of trial. . . ."[7] On March 11, 2010, the parties filed the Amended Joint Pre-Trial Statement signed by counsel to each and containing the facts listed above. In section 11, titled "The Effect of this Pre-Trial Stipulation," the parties, in accordance with the Pre-Trial Order, attested to the admissions made and acknowledged that the Amended Joint Pre-Trial Statement would supercede the pleadings.[8]

On the eve of trial, Cristina withdrew Counts I and II of her Complaint in light of the waiver contained within the Stipulation, leaving the dischargeability of her unliquidated personal injury claim under 11 U.S.C. § 523(a)(6) as the only remaining issue. Additionally, she filed a Request for Findings of Fact and Rulings of Law (the "Request for Findings") and a Motion to Establish Facts

---

[6] I previously entered two prior pre-trial orders, but continued the deadlines contained therein on the request of the parties.

[7] Docket No. 76 at ¶¶ 5.2, 5.11.

[8] JPTS at ¶ 11.

4

and Genuiness [sic] of Documents Set Forth in Plaintiff's Separate Requests for Admissions Served on September 11, 2009 and January 19, 2010 (the "Motion to Establish Facts").[9] On March 17, 2010, prior to opening statements, Cristina asserted, consistent with the pleadings filed the night before, that she was entitled to judgment as a matter of law based upon the undisputed facts set forth in the Amended Joint Pre-Trial Statement, or alternatively, those in her Motion to Establish Facts.

Despite the admissions contained within the Amended Joint Pre-Trial Statement, the Debtor contended that at least one material issue of fact remained in dispute, namely, whether the Debtor intended to cause the injury *that resulted*.[10]  Alternatively, he asserted that the waiver contained within the Stipulation also applied to the personal injury claim because the issue was inextricably bound with the divorce proceeding.  Cristina opposed, arguing that the Probate Court lacked jurisdiction to enter a money judgment for a personal injury claim.

It appearing that the matter could be decided on stipulated facts, I took it under advisement and gave the parties an opportunity to file briefs, which they did on April 28, 2010.

### III. POSITIONS OF THE PARTIES

#### Cristina

Cristina argues that the Debtor has stipulated to all the elements of 11 U.S.C. § 523(a)(6) by admitting that he purposefully committed the Assault with the intention of causing physical harm and emotional fright, which he did, resulting in Cristina requiring medical care. Although the Debtor

---

[9] Through the Motion to Establish Facts, Cristina sought a ruling that facts set forth in her requests for admissions were established for trial in light of the Debtor's untimely and contradictory responses.  This motion, however, is ultimately moot because the same facts were already admitted in the Amended Joint Pre-Trial Statement.

[10] Trans. March 17, 2010 at 8:10-23; 10:5-9; 12:1-24; 13:1-15; 17:5-9; 18:1-7.

contends that she never alleged any debt from her injuries, Cristina asserts that her complaint was amended to add an allegation that she "became indebted for services rendered for her physical and emotional injuries . . ."[11] Moreover, Cristina contends that under the particular facts of this case, she easily states a claim for assault, battery, and intentional infliction of emotion distress under Massachusetts law.

With respect to the waiver issue, Cristina asserts that the Stipulation was only meant to apply to questions of alimony, spousal support, and property division, and not matters pertaining to her tort claims. She argues that the Probate Court is without jurisdiction to decide such matters, and as such, her personal injury claims were not, nor could they have been, presented to the Probate Court. Relying on *In re Colokathis*,[12] she stresses that I must look behind the settlement to determine the true character of the debt.

Finally, in response to the statute of limitations defense raised by the Debtor in his brief, Cristina contends that such an argument was waived by his failure to assert it earlier. In any event, she argues, the defense is patently erroneous as a matter of law because the statute of limitations for her personal injury action was tolled by 11 U.S.C. § 108(c).

The Debtor

In his brief, the Debtor argues that Count III of the Complaint fails to state a cause of action because it does not allege that Cristina was intentionally injured by the Debtor, that she incurred a monetary loss as a result, that a debt exists resulting from the intentional injury, or that she has been awarded a monetary judgment. He further notes that the Complaint is devoid of any allegations

---

[11] Docket No. 15, at ¶ 30.

[12] *Bauer v. Colokathis (In re Colokathis)*, 417 B.R. 150, 159 (Bankr. D. Mass. 2009).

describing the nature of her injury, rendering her claim unsubstantiated. Accordingly, the Debtor asserts, Count III should be dismissed.

As previously stated, the Debtor's primary argument at the hearing was that he did not intend the injury that resulted. Relying on *Kawaauhau v. Geiger*,[13] the Debtor asserts that the specific injury that resulted must be intended under 11 U.S.C. § 523(a)(6), and that reckless and negligent injuries are insufficient to give rise to a nondischargeable debt. In support, he argues that a plea of "sufficient facts" to criminal assault and battery is not a conviction, and therefore does not necessarily rise to the level of 11 U.S.C. § 523(a)(6). Based on the record before me, including the memorandum that accompanied the judgment of divorce nisi, the Debtor contends that there is no evidence that Cristina's injuries were not accidental or inadvertent. Moreover, because the Cristina has not described any injury, assuming there is one, he asserts that it is impossible to conclude the Debtor had the specific intent to cause that injury.

Alternatively, the Debtor argues that Cristina's personal injury claim is time-barred by the three-year statute of limitations under Massachusetts law. Although the automatic stay prevented her from filing such an action in the state courts, the Debtor contends that Cristina could have obtained relief from stay as she did to continue the divorce proceeding in the Probate Court. Moreover, relying on *Buker v. Nat'l Mgmt. Corp.*,[14] he asserts that the statute of limitations was not tolled because of his bankruptcy filing.[15]

---

[13] *Kawaauhau v. Geiger*, 523 U.S. 57 (1998).

[14] *Buker v. Nat'l Mgmt. Corp.*, 16 Mass.App.Ct. 36, 448 N.E.2d 1299 (1983).

[15] The Debtor also cites *Hemric v. Reed and Prince Mfg. Co.*, 739 F.2d 1 (1st Cir. 1984), and *Martinez v. DuBois*, No. 00-CV-10270-MEL, 2000 WL 1478543 (D. Mass. Sept. 28, 2000), as cases citing Buker, but neither appear to have anything to do with bankruptcy.

Lastly, the Debtor returns to his waiver argument, asserting that Cristina "waive[d] any and all claims which could have been or were presented" to the Probate Court. Conceding that the Probate Court generally lacks jurisdiction over torts, the Debtor cites *Apostolicas Properties Corp. v. Richman*[16] for the proposition that an exception exists where the Probate Court takes into consideration tort based issues when deciding alimony and support. Medical costs, for example, are routinely considered in divorce proceedings. He argues that because tort based issues were presented to the Probate Court, as evidenced by the reference to Cristina's "alleged" injuries in the Probate Court's memorandum, Cristina has already been compensated. Therefore, pursuant to the Stipulation, Cristina has waived any further recovery.

## IV. <u>DISCUSSION</u>

    A.  <u>The Summary Judgment Standard</u>

Pursuant to Fed. R. Civ. P. 56, summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[17] "A 'genuine' issue is one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party."[18] Material facts are those having the potential to affect

---

[16] *Apostolicas Properties Corp. v. Richman*, 28 Mass.App.Ct. 671, 555 N.E.2d 238 (1990).

[17] Fed. R. Civ. P. 56(c) made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

[18] *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d. 1, 2 (1st Cir. 1999)(*quoting Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 427 (1st Cir. 1996)).

the outcome of the suit under the applicable law.[19]

The party seeking summary judgment "always bears the initial responsibility . . . of identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on filed, together with the affidavits, if any,' which demonstrate the absence of a genuine issue of material fact."[20] The nonmoving party must then "produce 'specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'"[21] A trialworthy issue cannot be established by "conclusory allegations, improbable inferences, and unsupported speculation."[22] The Court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[23] Nonetheless, the absence of a material factual dispute is merely a "condition necessary," but not a "condition sufficient" to summary judgment.[24] The moving party must still demonstrate an entitlement to judgment as a matter of law.[25]

---

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314-315 (1st Cir. 1995); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d at 703.

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

[21] *Triangle Trading Co.*, 200 F.3d at 2 (*quoting Morris v. Gov't Dev't Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)).

[22] *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990)(*quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

[23] *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000).

[24] *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 764 (1st Cir.1994).

[25] *Id.*

B.  The Debtor's Statute of Limitations and Waiver Defenses

Before considering the nondiscahrgeability of Cristina's unliquidated personal injury claim, I must consider two threshold defenses raised by the Debtor.  First, the Debtor contends that she failed to commence an action to determine the Debtor's liability within the three-year statute of limitations for tort claims under Massachusetts law and is now barred from doing so.[26]  Despite his assertions to the contrary, the Bankruptcy Code expressly provides for the tolling of a statute of limitations during the pendency of a debtor's bankruptcy.[27]  Section 108(c) states in relevant part:

> Except as provided in section 524 of this title, if applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of–
>     (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>     (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.[28]

Section 362(c)(2) provides that the automatic stay continues until the case is closed, dismissed, or in Chapter 7 case, the time when a discharge is granted or denied, whichever is earliest.[29]

Here, the statute of limitations had not yet expired as the Debtor filed his petition less than two years after the Assault, and as a result 11 U.S.C. § 108(c) extended the time for Cristina to

---

[26] Mass. Gen. Laws ch. 260, § 2A.

[27] *See* 11 U.S.C. § 108.  The case cited by the Debtor in support of his argument, *Buker v. Nat'l Mgmt. Corp.*, 16 Mass.App.Ct. at 40, was a pre-Bankruptcy Code case but nonetheless contains an express reference to 11 U.S.C. § 108 in a footnote to the very sentence upon which the Debtor relies.

[28] 11 U.S.C. § 108(c)(1), (2).

[29] 11 U.S.C. § 362(c)(2)(A), (B), (C).

commence suit against him until thirty days after the earliest of the three events listed in 11 U.S.C. § 362(c)(2). Because the Debtor has not received a discharge and the case remains open and pending, the statute of limitations has not yet expired. Moreover, it is irrelevant that Cristina could have obtained relief from stay to bring her action earlier as 11 U.S.C. § 108(c) does not mandate that creditors seek a termination of the automatic stay. Accordingly, Cristina's unliquidated personal injury claim is not time-barred.

Second, the Debtor asserts that Cristina's tort claims were presented to the Probate Court and were waived pursuant to the Stipulation. The Probate Court, however, lacks jurisdiction to hear personal injury claims and he concedes as much.[30] Nonetheless, the Debtor contends that the Probate Court could have made findings on tort based issues while considering alimony and support. I disagree as the Supreme Judicial Court of Massachusetts rejected this argument under circumstances similar to those presented in this case. In *Heacock v. Heacock*,[31] the defendant asserted a res judicata defense to his former spouse's tort action for injuries stemming from domestic abuse, arguing that the abuse was presented in the divorce proceedings and the plaintiff failed to disclose the pending tort claim to the Probate Court. The Supreme Judicial Court held res judicata did not apply, stating:

> A tort action is not based on the same underlying claim as an action for divorce. *Accord, Goldman v. Wexler*, 122 Mich.App. 744, 748, 333 N.W.2d 121 (1983); *Aubert v. Aubert*, 129 N.H. 422, 529 A.2d 909, 911-912 (1987); *Lord v. Shaw*, 665 P.2d 1288, 1291 (Utah 1983). The purpose of a tort action is to redress a legal wrong in damages; that of a divorce action is to sever the marital relationship between the parties, and, where appropriate, to fix the parties' respective rights and obligations with regard to alimony and support, and to divide the marital estate. Although a judge in awarding alimony and dividing marital property must consider, among other things, the conduct of the parties during the marriage, G.L. c. 208, § 34 (1986 ed.),

---

[30] *See* Mass. Gen. Laws ch.215, §§ 3, 6.

[31] *Heacock v. Heacock*, 402 Mass. 21, 520 N.E.2d 151 (1988).

11

the purposes for which these awards are made do not include compensating a party in damages for injuries suffered. . . . *The plaintiff could not have recovered damages for the tort in the divorce action, as the Probate Court does not have jurisdiction to hear tort actions and award damages.* G.L. c. 215, §§ 3, 6 (1986 ed.). *See, e.g., Prahl v. Prahl*, 335 Mass. 483, 140 N.E.2d 480 (1957).[32]

Although *Heacock* is directly on point, the Debtor instead relies on the *Apostolicas Properties Corp.* case, asserting that it stands as an exception to the general rule. This reasoning is flawed as that case involved an equity suit arising from property rights determined by the Probate Court.[33] Moreover, in distinguishing *Heacock*, the Court of Appeals expressly recognized that no property issues were implicated by the tort claims in *Heacock* such as to compel Mrs. Heacock to assert them in the divorce proceeding.[34] As such, neither case supports the Debtor's position. Therefore, I find that Cristina did not waive her personal injury claim by virtue of the Stipulation because the Probate Court lacked jurisdiction over the claim.

C. Dischargeability under 11 U.S.C. § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."[35] In *Kawaauhau v. Geiger*, the Supreme Court of the United States unanimously held "that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."[36] The Supreme Court reasoned:

---

[32] *Id.* at 24 (emphasis added).

[33] *Apostolicas Properties Corp. v. Richman*, 28 Mass.App.Ct. at 672.

[34] *Id.* at 678.

[35] 11 U.S.C. § 523(a)(6).

[36] *Kawaauhau v. Geiger*, 523 U.S. at 64.

12

>    The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, . . . the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964) (emphasis added).[37]

In light of the Supreme Court's citation to the Restatement (Second) of Torts (the "Restatement"),[38] courts have concluded that the Supreme Court meant the willfulness element to include actions intentionally done and known by the debtor to be "substantially certain to cause injury."[39]

The *Geiger* decision, however, did not address the element of malice required under 11 U.S.C. § 523(a)(6). As such, courts within this circuit have concluded that *Geiger* did not upset the United States Court of Appeals for the First Circuit's prior determination in *Printy v. Dean Witter Reynolds, Inc.*[40] that 11 U.S.C. § 523(a)(6)'s element of malice requires that the creditor show the injury was caused "without just cause or excuse."[41]  Therefore, construing *Geiger* and *Printy*

---

[37] *Id.* at 61-62.

[38] Restatement (Second) of Torts § 8A ("The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.").

[39] *See, e.g., McAlister v. Slosberg (In re Slosberg)*, 225 B.R. 9, 18-19 (Bankr. D. Me. 1998).

[40] *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir. 1997).

[41] *See, e.g., Jones v. Svreck (In re Jones)*, 300 B.R. 133, 140 (B.A.P. 1st Cir. 2003); *In re Colokathis*, 417 B.R. at 158; *Greene v. Mullarkey (In re Mullarkey)*, 410 B.R. 338, 355 (Bankr. D. Mass. 2009); *Casella Waste Mgmt. v. Romano (In re Romano)*, 385 B.R. 12, 31 (Bankr. D. Mass. 2008); *Burke v. Neronha (In re Neronha)*, 344 B.R. 229, 231 (Bankr. D. Mass. 2006); *Caci v. Brink (In re Brink)*, 333 B.R. 560, 567 (Bankr. D. Mass. 2005); *Gomes v. Limieux (In re*

together, I find that for a debt to be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6), the creditor must show that: (1) the creditor suffered an injury; (2) the injury was the result the debtor's actions; (3) the debtor intended to cause the injury or that there was a substantial certainty that the injury would occur; and (4) the debtor had no just cause or excuse for the action resulting in injury.[42] As always, exceptions to discharge must be proven by a preponderance of the evidence.[43]

In the present case, the act in question is the Assault. In the Amended Joint Pre-Trial Statement, the Debtor admitted that "[a]t the time [he] committed the [Assault], he *intended to cause* and *did cause* Cristina *physical harm and pain and emotional fright*."[44] Moreover, he further admitted that he "did cause Cristina such physical harm that she was caused to seek and obtain medical care for her injuries and did cause her such emotional harm that she was ca[u]sed [sic] to seek and obtain care for her emotion[al] [sic] condition" and that "Cristina became indebted for services rendered to her for her physical and emotional injuries and for which Alex is liable . . . ."[45] Finally, as the Assault gave rise to a criminal complaint to which the Debtor admitted sufficient facts for a guilty finding to be entered against him, I find that it was committed without just cause or excuse.[46]

---

*Limieux)*, 306 B.R. 433, 440 (Bankr. D. Mass. 2004); *McDonough v. Smith (In re Smith)*, 270 B.R. 544, 549 (Bankr. D. Mass. 2001); *In re Slosberg*, 225 B.R. at 21.

[42] *See In re Colokathis*, 417 B.R. at 158.

[43] *See Grogan v. Garner*, 498 U.S. 279 (1991).

[44] JPTS at ¶ 2:4.

[45] *Id.* at ¶¶ 2:4-5.

[46] *In re Limieux*, 306 B.R. at 441.

Although the Debtor stipulated to all the facts necessary to find a "willful and malicious injury" under 11 U.S.C. § 523(a)(6), he attempts, in vain, to avoid judgment by attacking the sufficiency of Cristina's pleadings. First, his reliance on perceived deficiencies in the Amended Complaint at this stage is misguided because the Pre-Trial Order expressly states that "th[e] [Joint Pre-Trial Statement] shall supercede the pleadings and govern the course of trial. . . ."[47] Second, even though the exact nature and extent of her injuries are not described, the Debtor admitted that he injured her and that such injuries required her to seek medical attention, the costs for which he agrees he is now liable. In light of the parties agreement as to the existence of the injury resulting from the Assault, Cristina's burden with respect to the first element is satisfied.

The Debtor's assertion that he did not intend the injury that resulted is similarly unavailing. Not surprisingly, this argument has been advanced before other courts and uniformly rejected.[48]

---

[47] Docket No. 76 at ¶¶ 5.2, 5.11.

[48] *In re Granoff*, 250 Fed.Appx. at 496, 2007 WL 2980190 *2 (3d Cir. 2007) ("Moreover, the fact that Granoff might not have been substantially certain that Bibus's left tympanic membrane would be perforated does not alter the determination that Bibus established by a preponderance of the evidence that Granoff was substantially certain that his striking her would produce some significant injury."); *Elbing v. Blair (In re Blair)*, 359 B.R. 233, 239 (Bankr. E.D. Wis. 2007) ("The fact that the defendant only meant for the punch to "send a message," not to break anything, is irrelevant. The only way to send a message by a punch in the face is to hurt someone, which the defendant admittedly meant to do, and this injury is enough to fall within the statute."); *Brokaw v. McSorley (In re McSorley)*, No. 05-31213, 2006 WL 3000109 (Bankr. S.D. Iowa Oct. 18, 2006) (debtor had subjective intent to injure when executing dangerous fouling technique in highschool basketball game); *Green v. Olson (In re Olson)*, 333 B.R. 835, 839 (Bankr. D. Minn. 2005) (assertion that debtor who was criminally guilty of intentionally inflicting bodily harm acted with only "general intent" was meritless and verging on unconscionable); *Kleman v. Taylor (In re Taylor)*, 322 B.R. 306, 309 (Bankr. N.D. Ohio 2004) ("the Defendant's actions were, in fact, 'willful' based upon the common sense notion that when one physically hits another with enough force to break another's jaw, an alternative, but plausible explanation is all but impossible to discern"); *Grant v. Wible (In re Grant)*, No. 93-2238, 1993 WL 390171 * 2 (Bankr. W.D. Pa. Sept. 27, 1993) ("The degree of bodily injury is not dispositive.").

Contrary to the Debtor's assertion, *Geiger* does not require a debtor intend the *specific* injury, only "the consequences of an act."[49] Moreover, a vast majority of courts, citing *Geiger*'s reliance on the Restatement, hold that injuries resulting from intentional acts known by the debtor to be "substantially certain to cause injury" are nondischargeable, regardless of whether the debtor had a subjective intent to cause any injury at all.[50] No court has read "injury" as narrowly as the Debtor suggests, which is likely why he cites no supporting authority. Indeed, in the context of assaults and batteries, courts have applied a broader definition, recognizing that a debtor knows that physical violence is substantially certain to produce some significant physical harm even if the exact nature of the resulting bodily damage is not known.[51]

---

[49] *Kawaauhau v. Geiger*, 523 U.S. at 62.

[50] *See, e.g., In re Colokathis*, 417 B.R. at 158; *In re Mullarkey*, 410 B.R. at 355 n.16; *In re Romano*, 385 B.R. at 30; *Massod v. Fayad (In re Fayad)*, No. 01-1062, 2008 WL 160647 *2 (Bankr. D. Mass. Jan. 5, 2008); *McGarry v. Chew (In re Chew)*, No. 06-1039, 2007 WL 1876457 *2 (Bankr. D. Mass. Jun. 27, 2007); *Beland v. Cunningham (In re Cunningham)*, 365 B.R. 352, 363 (Bankr. D. Mass. 2007); *Alliguie v. Power Innovators, Inc. (In re Boward)*, No. 03-1520, 2007 WL 3010538 *4 (Bankr. D. Mass. Oct. 9, 2007); *DCFS Trust v. Goldstein (In re Goldstein)*, 345 B.R. 412, 423 (Bankr. D. Mass. 2006); *In re Neronha*, 344 B.R. at 231; *In re Brink*, 333 B.R. at 567; *In re Limieux*, 306 B.R. at 440; *Read & Lundy, Inc. v. Brier (In re Brier)*, 274 B.R. 37, 44 (Bankr. D. Mass. 2002); *In re Smith*, 270 B.R. at 549; *see also Berry v. Vollbracht (In re Vollbracht)*, 276 Fed.Appx. 360, 361, 2007 WL 3144848 (5th Cir. 2007); *In re Granoff*, 250 Fed.Appx. 494, 2007 WL 2980190 (3d Cir. 2007); *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir.1999); *Thornton v. City of Philadelphia*, No. 04-2536, 2005 WL 2716484 *4 (E.D. Pa. Oct. 20, 2005); *Matson v. Hawkins (In re Hawkins)*, 231 B.R. 222, 228 (D.N.J. 1999); *Schweitzer v. Kartman (In re Kartman)*, 391 B.R. 281, 284 (Bankr. W.D. Pa. 2008); *McCann v. Jacques*, No. 06-1069, 2007 WL 1420590 *2 (Bankr. D.N.J. 2007); *Doherty v. Coccia (In re Coccia)*, 351 B.R. 17, 20 (Bankr. D.R.I. 2006); *Ready Productions, Inc. v. Jarvis (In re Jarvis)*, No. , 2005 WL 1941639 * 3 (Bankr. D.N.H. Aug. 12, 2005); *In re Slosberg*, 225 B.R. at 21; *Worster v. Howcroft (In re Howcroft)*, 223 B.R. 845, 847 (Bankr. D.N.H. 1998).

[51] *In re Granoff*, 250 Fed.Appx. at 496, 2007 WL 2980190 *2 (Section 523(a)(6) is satisfied by showing that strike was substantially certain to produce some significant injury); *Steier v. Best (In re Best)*, 109 Fed.Appx.1, 6, 2004 WL 1544066 (6th Cir. 2004) (injury is the

Ultimately, the Debtor's argument relies completely on the absence of any description of Cristina's injuries to mask its absurdity. Nevertheless, the illusion of merit immediately disappears once it becomes clear that, in light of his admissions, he is arguing that the physical and emotional injuries that Cristina suffered as a result of the Assault were not the ones he intended to cause and were not substantially certain to occur. Based on the Debtor's actions, specifically that he "struck Cristina *with great force*, grabbed [her] by the throat and struck her head *repeatedly against the interior wall of the premises* . . . and threw [her] *with such force onto a table that the table was caused to be broken*," it is mind-boggling to contemplate a physical injury that she could have suffered that was not substantially certain to occur.[52] This reveals his assertion for what it is: a thinly veiled attempt to create a disputed material fact and retract an admission made in the Amended Joint Pre-Trial Statement.

---

intentional invasion of the rights of another, not simply harm to a person); *In re Blair*, 359 B.R. at 239 (Bankr. E.D. Wis. 2007) ("The only way to send a message by a punch in the face is to hurt someone . . . and this injury is enough to fall within the statute."); *In re McSorley*, 2006 WL 3000109 *3 (dangerous fouling technique in high school basketball game was certain to cause physical injury); *In re Olson*, 333 B.R. at 839; *In re Taylor*, 322 B.R. at 309 ("[T]he Defendant's actions were, in fact, 'willful' based upon the common sense notion that when one physically hits another with enough force to break another's jaw, an alternative, but plausible explanation is all but impossible to discern"); *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 454 (Bankr. N.D. Ind. 2001) (the focus is on the true injury and not the creditor's damages; "[I]n a case involving assault and battery, the true injury is not the creditor's broken jaw, but rather, the unconsented to touching that produced the broken jaw."); *Montgomery v. Herring (In re Herring)*, 193 B.R. 344, 354 (Bankr. N.D. Ala. 1995) (the only conceivable purpose in intentionally shooting someone is to inflict harm); *Homan v. Perretti*, 172 B.R. 214, 217 (Bankr. N.D.Ohio 1994) (one person does not strike a blow at another person's face without intending to injure the other person); *In re Grant*, 1993 WL 390171 * 2 ("The act of striking another person is calculated to cause harm, and, therefore, is done with the knowledge that harm will result."); *Zuern v. Chapman (In re Chapman)*, 46 B.R. 90, 93 (Bankr. N.D. Ohio 1985) ("One person does not kick another person in the head without intending to harm him.").

[52] JPTS at ¶ 2:3.

17

In sum, I find that Cristina has demonstrated a debt for a willful and malicious injury and will enter judgment in her favor.

D.  Sanctions under Fed. R. Bankr. P. 9011

Fed. R. Bankr. P. 9011 "emphasizes responsible behavior on the part of [attorneys]" and requires them "to conduct [themselves] in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system."[53]  It provides in relevant part:

> (b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> * * *
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . .[54]

Under Fed. R. Bankr. P. 9011, the focus is not whether the claim asserted was frivolous, but whether the attorney conducted an adequate inquiry into the facts and law before filing the claim.[55]  "In examining the actions of counsel, the First Circuit has stated that '[s]ubjective good faith is not the issue; generally, Rule 9011 demands that counsel's actions comport with an objective standard of

---

[53] *Featherston v. Goldman (In re D.C. Sullivan Co., Inc.)*, 843 F.2d 596, 598 (1st Cir. 1988), *aff'd in part on rehearing en banc*, 878 F.2d 1478 (1989).

[54] Fed. R. Bankr. P. 9011(b)(2).

[55] *See Matter of Excello Press, Inc.*, 967 F.2d 1109, 1111-1112 (7th Cir. 1992).

18

lawyerly performance.'"[56] Accordingly, "[a] violation of Rule 11 . . . might be caused by inexperience, incompetence, willfulness, or deliberate choice."[57]

As discussed above, Attorney Baker filed a brief on behalf of the Debtor setting forth four defenses which had no basis in fact or law. First, the Debtor's assertion that Cristina's personal injury claim was time-barred was blatantly erroneous as the Bankruptcy Code unequivocally provides for the tolling. Moreover, the case cited in support of that argument, *Buker v. Nat'l Mgmt Corp.*, is inapplicable to this case as it involved pre-Bankruptcy Code law. In any event, Attorney Baker was on notice as to the existence of 11 U.S.C. § 108(c) because that case expressly references 11 U.S.C. § 108.[58] Second, Attorney Baker cited *Heacock*, which directly addresses the issue of whether the personal injury claim could have been decided by the Probate Court, but nonetheless advanced an argument contrary to both that case and the *Apostolicas Properties Corp.* case. Third, by arguing that Cristina's Amended Complaint was deficient after filing the Amended Joint Pre-Trial Statement, Attorney Baker ignored the express provisions of my Pre-Trial Order as well his own acknowledgment in the Amended Joint Pre-Trial Statement. Finally, the assertion that 11 U.S.C. § 523(a)(6) requires intent to cause the *specific injury that resulted* was not supported by *Gieger*, the only case he cited for the proposition, was inconsistent with the substantial certainty standard adopted by all courts in First Circuit, and was rejected by all courts that have addressed the issue.

Although the issue of sanctions under Fed. R. Bankr. P. 9011(b) may be raised by the Court

---

[56] *Parker v. Boston Univ. (In re Parker)*, 334 B.R. 529, 538 (Bankr. D. Mass. 2005) (*quoting In re D.C. Sullivan Co., Inc.*, 843 F.2d at 599).

[57] *Sylver v. Sec. Pac. Servs. (In re Sylver)*, 214 B.R. 422, 428 (B.A.P. 1st Cir. 1997) (*quoting Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990)).

[58] *Buker v. Nat'l Mgmt. Corp.*, 16 Mass.App.Ct. 40 n.6.

19

*sua sponte*, Fed. R. Bankr. P. 9011(c)(2) requires that the I afford Attorney Baker notice and a reasonable opportunity to respond before I may impose sanctions.[59] Therefore, I will order Attorney Baker to show cause why I should not impose sanctions against him for advancing defenses and legal contentions not warranted by fact or existing law.

## V. **CONCLUSION**

In light of the foregoing, I will enter judgment in favor of Cristina on Count III of the Amended Complaint and hold her claim nondischargeable under 11 U.S.C. § 523(a)(6). Additionally, I will order Attorney Baker to show cause why he should not be sanctioned for the above described violations of Fed. R. Bankr. P. 9011(b).

_____
William C. Hillman
United States Bankruptcy Judge

Dated: May 26, 2010

---

[59] Fed. R. Bankr. P. 9011(c)(2).