UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

_____

IN RE:
ALEX HERMOSILLA,                                          Chapter 7
                    DEBTOR.                               Case No. 05-11048-WCH
_____

HILDA CRISTINA HERMOSILLA,
                    PLAINTIFF,
                                                         Adversary Proceeding
v.                                                       No. 05-1360

ALEX HERMOSILLA,
                    DEFENDANT.
_____


**MEMORANDUM OF DECISION**

**I. <u>INTRODUCTION</u>**

The matter before the Court is the determination of appropriate sanctions to impose

against Attorney David G. Baker ("Attorney Baker"), counsel of record to the debtor-defendant

Alex Hermosilla (the "Debtor"), for the advancement of arguments not warranted by fact or law

both here and before the United States District Court for the District of Massachusetts (the

"District Court").    On May 26, 2010, in connection with the entry of judgment of

nondischargeability (the "Judgment") in favor of the Plaintiff, Hilda Cristina Hermosilla

("Cristina"), in this adversary proceeding, I ordered Attorney Baker to show cause "why he

should not be sanctioned for advancing defenses not warranted by fact or law in violation of Fed.

1

R. Bankr. P. 9011."[1]  Before I suspended consideration of the order to show cause in light of the

Debtor's timely appeal of the Judgment to the District Court, Attorney Baker filed the Response

to Order to Show Cause (the "Response"), arguing that sanctions are inappropriate because I

misunderstood his arguments, which he asserts were adequately based in law or fact or were

otherwise made in good faith for the extension or modification of existing law.  On March 21,

2011, the District Court entered an Order of Remand, dismissing the Debtor's appeal, granting

Cristina's "Plaintiff/Appellee's Motion for Damages and Costs for Frivolous Appeal" (the

"Motion for Sanctions"), and remanding the matter for determination of the amount.  On remand,

I ordered Cristina's counsel, Attorney Dennis R. Brown ("Attorney Brown"), to file a fee

application (the "Fee Application"), which he did, and to which Attorney Baker filed a response,

asserting that the fees requested are grossly excessive.  The appeal having been resolved, I

resumed consideration of the order to show cause in conjunction with the Fee Application.  For

the reasons set forth below, I find that Cristina is entitled to attorney's fees in the amount of

$15,306.25 as damages under Fed. R. Bankr. P. 8020 for the Appeal and, with respect to the

order to show cause, impose sanctions in the amount of $9,000 against Attorney Baker, payable

to the Clerk of Court, for violations of Fed. R. Bankr. P. 9011.

## II. <u>BACKGROUND</u>[2]

Because the issues comprising the order to show cause stem from the events leading to

my entry of judgment in favor Cristina in this adversary proceeding, my Memorandum of

---

[1] Docket No. 117.

[2] I take judicial notice of the docket in the adversary proceeding, as well as that of the main case pending before this Court. *See Rodi v. Southern New England School of Law*, 389 F.3d 5, 18-19 (1st Cir. 2004) (citations omitted).

Decision dated May 26, 2010 (the "Decision") is incorporated herein by reference.[3]  By way of brief background, on May 20, 2005, Cristina filed a complaint against the Debtor seeking, *inter alia*, to except from discharge pursuant to 11 U.S.C. § 523(a)(6) an unliquidated claim steeming from a personal injury to her caused by the Debtor, her former spouse, arising from an incident of domestic violence.[4]

    On January 13, 2010, I entered a final pre-trial order (the "Pre-Trial Order") scheduling the matter for trial.[5]  The Pre-Trial Order directed the parties to file a Joint Pre-Trial Statement which included a statement of admitted facts that required no proof and expressly provided that the Joint Pre-Trial Statement "shall supercede the pleadings and govern the course of trial. . . ."[6] On March 11, 2010, the parties filed the Amended Joint Pre-Trial Statement listing, *inter alia*, the following facts as admitted and requiring no proof:

> Cristina and the Debtor were married on Marcy [sic] 15, 2001.  The parties had no children during their marriage.

> The parties lived together until July 20, 2003, when [the Debtor] assaulted and battered Cristina [(the "Assault")].

> During the above-referenced assault and battery, [the Debtor] purposefully struck Cristina with great force, grabbed Cristina by the throat and struck her head repeatedly against the interior wall of the premises at which [the Debtor] and Cristina then resided and threw Cristina with such force onto a table that the table was caused to be broken.

---

[3] *See Hermosilla v. Hermosilla (In re Hermosilla)*, 430 B.R. 13 (Bankr. D. Mass. 2010).

[4] Though not relevant here, the complaint, which was filed prior the entry of a final judgment in the parties' divorce proceeding in the Probate and Family Court Department of Essex Court Superior (the "Probate Court"), contained two additional counts under 11 U.S.C. §§ 523(a)(5) and (a)(15) that were ultimately waived on the eve of trial.

[5] I previously entered two prior pre-trial orders, but continued the deadlines contained therein on the request of the parties.

[6] Docket No. 76 at ¶¶ 5.2, 5.11.

At the time [the Debtor] committed the physical acts referenced above, he intended to cause and did cause Cristina physical harm and pain and emotional fright and did cause Cristina such physical harm that she was caused to seek and obtain medical care for her injuries and did cause her such emotional harm that she was cased [sic] to seek and obtain care for her emotional condition.

Cristina became indebted for services rendered to her for her physical and emotional injuries and for which [the Debtor] is liable to Cristina together with the physical and emotional damages [the Debtor] caused Cristina.

On July 21, 2003 a Criminal Complaint issued out of the Lynn District Court against [the Debtor] for assault and battery with a dangerous weapon and assault and battery as a result of [the Debtor's] beating of Cristina on July 20, 2003.

On August 5, 2004, [the Debtor] responded to the charges and admitted sufficient facts to support a finding of guilt on the charges of assault and battery with a dangerous weapon and assault and battery as a result of the his [sic] beating of Cristina, and a guilty finding entered on those findings on August 5, 2004 and [the Debtor] received, inter alia, a suspended sentence of nine (9) months in the Essex County House of Correction . . . .

* * *

On or about August 18, 2003, Cristina filed a Divorce Complaint against [the Debtor] in the Probate and Family Court Department of Essex Court Superior . . . .

* * *

The parties have subsequently been divorced, an unchallenged and unappealed judgment of divorce nisi having entered on September 15, 2005 and a final judgment of divorce becoming effective as of December 14, 2005 according to Massachusetts Law . . . .[7]

In section 11, titled "The Effect of this Pre-Trial Stipulation," the parties, in accordance with the

Pre-Trial Order, attested to the admissions made and acknowledged that the Amended Joint Pre-

---

[7] Amended Joint Pre-Trial Statement, Docket No. 89 ("JPTS"), at ¶¶ 2:1-7, 10, 17 (citations omitted).

Trial Statement would supercede the pleadings.[8]  I further note that on the final page, Attorney

Baker signed the Amended Joint Pre-Trial Statement on behalf of the Debtor.

Although not stated in the admitted facts, the Probate Court entered a Modification

Judgment on February 22, 2007, incorporating a stipulation of the parties (the "Stipulation")

which amended the September 15, 2005 divorce judgment.  The Stipulation, which was listed as

one of the Debtor's proposed exhibits in the Joint Pre-Trial Statement, provided, *inter alia*, that

Cristina waived all future claims to alimony and spousal support and that both she and the

Debtor waived "any and all claims which could have been or were presented in these divorce

proceedings and post divorce proceedings in this Court (including attorney's fees) and all

contempt proceedings . . . ."[9]

A trial on the matter was scheduled for March 17, 2010, but prior to opening statements,

Cristina asserted that she was entitled to judgment as a matter of law based upon the undisputed

facts set forth in the Amended Joint Pre-Trial Statement.  Despite the admissions contained

within the Amended Joint Pre-Trial Statement, Attorney Baker contended that at least one

material issue of fact remained in dispute, namely, whether the Debtor *intended* to cause the

injury *that resulted*.[10]  Alternatively, he asserted that the waiver contained within the Stipulation

also applied to the personal injury claim because the issue was inextricably bound with the

divorce proceeding.  Cristina opposed, arguing that the Probate Court lacked jurisdiction to enter

---

[8] JPTS at ¶ 11.

[9] Defendant's Ex. 1.  The Debtor submitted a certified copy of the Stipulation to the Court at the March 17, 2010 hearing.

[10] Trans. March 17, 2010 at 8:10-23; 10:5-9; 12:1-24; 13:1-15; 17:5-9; 18:1-7.

5

a money judgment for a personal injury claim.  It appearing that the matter could be decided on

stipulated facts, I took it under advisement and gave the parties an opportunity to file briefs.

On April 28, 2010, Attorney Baker filed a Memorandum of Law Relating to Count III

(the "Memorandum") on behalf of the Debtor.[11]  Despite the language in my Pre-Trial Order

providing that the Amended Joint Pre-Trial Statement would supercede the pleadings filed in this

case, Attorney Baker nonetheless argued that the complaint should be dismissed for failure to

state a cause of action because it does not allege that Cristina was intentionally injured by the

Debtor, that she incurred a monetary loss as a result, that a debt exists resulting from the

intentional injury, that she has been awarded a monetary judgment, or describe the nature of her

injury.[12]  Notably, the Memorandum makes no reference to the Amended Joint Pre-Trial

Statement at all, instead referencing only the complaint.

With respect to the "willful and malicious" requirement of 11 U.S.C. § 523(a)(6),

Attorney Baker, on behalf of the Debtor, repeated the argument made at the March 17, 2010

hearing, stating that "[t]he specific injury that resulted must have been *intended*"[13] with a citation

to *Kawaauhau v. Geiger*.[14]  Indeed, he reiterated this position at the end of the Memorandum:

"the resulting injury must be what was intended."[15]  Attorney Baker went on to state that "the

complaint do[es] not allege any injury, physical or otherwise . . . [and] there is no allegation that

---

[11] Memorandum of Law Relating to Count III, Docket No. 113.

[12] *Id.* at 1.

[13] *Id.* at 2 (underline and italics in original).

[14] *Kawaauhau v. Geiger*, 523 U.S. 57 (1998).

[15] Memorandum at 6 (underline in original).  *See also Id.* at 3 ("she has not alleged any facts from which the court
could conclude that the debtor acted with the requisite intent to cause the specific injury complained of or with
substantial certainty that the injury would occur.") (underline in original).

any injury was <u>intended</u>,"[16] and that "[h]ere, [the Debtor] absolutely is denying any intent to injure the plaintiff at all," contending that any injuries that Cristina may have suffered were accidental or inadvertent.[17]   He further asserted that because the Cristina has not described any injury, assuming there is one, it is impossible to conclude the Debtor had the intent to cause that injury.[18]

In the Memorandum, Attorney Baker also argued that Cristina's personal injury claim is time-barred by the three-year statute of limitations under Massachusetts law.[19]   In support, he stated, "[t]he statute of limitations is <u>not</u> tolled because of [the Debtor]'s bankruptcy. *Buker v. National Managment Corp.*, 16 Mass. App. Ct. 36 (1983)".[20]   Therefore, he contended, even if Cristina had pled sufficient facts to state a claim, she is barred from liquidating it by the statute of limitations.[21]

Lastly, Attorney Baker returned to the waiver argument, asserting that Cristina "waive[d] any and all claims <u>which could have been or were presented</u>" to the Probate Court.[22]   While conceding that in *Heacock v. Heacock*[23] the Supreme Judicial Court of Massachusetts previously

---

[16] *Id.* at 2 (underline in original).

[17] *Id.* at 5-6.

[18] *Id.* at 3.

[19] *Id.* at 3-4.

[20] *Id.* at 4 (underline in original).  Attorney Baker also cited *Hemric v. Reed and Prince Mfg. Co.*, 739 F.2d 1 (1st Cir. 1984), and *Martinez v. DuBois*, No. 00-CV-10270-MEL, 2000 WL 1478543 (D. Mass. Sept. 28, 2000), as cases citing *Buker*, but neither appear to have anything to do with bankruptcy.  *See Buker v. Nat'l Mgmt. Corp.*, 16 Mass. App. Ct. 36, 448 N.E.2d 1299 (1983).

[21] Memorandum at 4.

[22] *Id.* (underline in original).

[23] *Heacock v. Heacock*, 402 Mass. 21, 520 N.E.2d 151 (1988).

held that the Probate Court lacks jurisdiction over torts, he cited *Apostolicas Properties Corp. v. Richman*[24] for the proposition that "[t]his is not a firm rule, however, and where the divorce court takes into consideration and makes findings on tort-based issues in making decisions on alimony and support, those findings are *res judicata*."[25]  In light of this exception, Attorney Baker argued that because tort based issues were presented to the Probate Court, Cristina has already been compensated for her injuries and has waived any further recovery.[26]

On May 26, 2010, I issued the Decision, rejecting the arguments made in the Memorandum and finding that based upon the admissions made in the Amended Joint Pre-Trial Statement Cristina was entitled to judgment as a matter of law.[27]  I further found that:

> Attorney Baker filed a brief on behalf of the Debtor setting forth four defenses which had no basis in fact or law.  First, the Debtor's assertion that Cristina's personal injury claim was time-barred was blatantly erroneous as the Bankruptcy Code unequivocally provides for the tolling.  Moreover, the case cited in support of that argument, *Buker v. Nat'l Mgmt Corp.*, is inapplicable to this case as it involved pre-Bankruptcy Code law.  In any event, Attorney Baker was on notice as to the existence of 11 U.S.C. § 108(c) because that case expressly references 11 U.S.C. § 108.  Second, Attorney Baker cited *Heacock*, which directly addresses the issue of whether the personal injury claim could have been decided by the Probate Court, but nonetheless advanced an argument contrary to both that case and the *Apostolicas Properties Corp.* case.  Third, by arguing that Cristina's Amended Complaint was deficient after filing the Amended Joint Pre-Trial Statement, Attorney Baker ignored the express provisions of my Pre-Trial Order as well his own acknowledgment in the Amended Joint Pre-Trial Statement. Finally, the assertion that 11 U.S.C. § 523(a)(6) requires intent to cause the *specific injury that resulted* was not supported by *Gieger*, the only case he cited for the proposition, was inconsistent with the substantial certainty standard

---

[24] *Apostolicas Properties Corp. v. Richman*, 28 Mass. App. Ct. 671, 555 N.E.2d 238 (1990).

[25] Memorandum at 4-5.

[26] *Id.* at 5.

[27] *In re Hermosilla*, 430 B.R. at 25.

adopted by all courts in First Circuit, and was rejected by all courts that have addressed the issue.[28]

In light of these findings, I ordered Attorney Baker to show cause in writing by July 14, 2010, "why he should not be sanctioned for advancing defenses not warranted by fact or law in violation of Fed. R. Bankr. P. 9011."[29]  On June 7, 2010, the Debtor filed a timely notice of appeal of the Judgment (the "Appeal") and election to have his appeal heard by the District Court.[30]

Attorney Baker filed the Response on June 25, 2010.[31]  As will be discussed in detail below, he contends that sanctions are inappropriate because his arguments were adequately based in law or were otherwise made in good faith, seeking an extension or modification of existing law.  I held a hearing on the order to show cause and the Response on July 14, 2010,[32] at which time Attorney Baker indicated that he had nothing to add to his papers.  That being the case, I took the matter under advisement to prepare written findings in accordance with Fed. R.

---

[28] *Id.* at *9 (citation omitted) (emphasis in original).

[29] Docket No. 117.  *See* Fed. R. Bankr. P. 9011(c)(1)(B).

[30] *See Hermosilla v. Hermosilla (In re Hermosilla)*, No. 05-1360, 2010 WL 2719953 (Bankr. D. Mass. Jul. 8, 2010) (denying Cristina's Motion to Dismiss Appeal simply because the Debtor inadvertently filed of the Designation of the Record on Appeal and Statement of Issues one day late).

[31] *See* Docket No. 134.

[32] Late in the evening on July 12, 2010, Attorney Baker filed motion to continue the hearing on the order to show cause, asserting that he "ha[d] been called to attend a trial in the Superior Court commencing on July 13 which is expected to last approximately five days, and therefore cannot attend the hearing." Docket No. 145.  As the hearing had been scheduled over two weeks earlier, I denied the motion to continue without prejudice to the filing of a renewed motion that contained the following information: 1) the name of the case and docket number; 2) the court in which the case is pending; and 3) the date and time when he received notice of the trial.  In lieu of filing another motion, Attorney Baker appeared at the July 14, 2010 hearing.

Bankr. P. 9011(c)(3).[33]  Five days later, I suspended consideration of the order to show cause pending resolution of the Appeal.

The Appeal was docketed at the District Court on July 16, 2010.  The Debtor, apparently under the mistaken impression that a scheduling order would enter, did not file a brief until August 19, 2010.[34]  On August 30, 2010, Cristina moved to strike the Debtor's brief and dismiss the Appeal on account of the Debtor having filed his brief 25 days late.[35]  Contemporaneously therewith, Cristina filed a Motion to Stay and Enlarge Time for Filing the Appellee's Brief ("Motion to Stay and Enlarge"), reasoning that if the District Court were to rule favorably on the motions to strike and dismiss the Appeal, it would be uneconomical and inefficient for Cristina's counsel to prepare a brief.  Alternatively, Cristina requested the same 25 day extension that the Debtor enjoyed.  On September 1, 2010, the District Court entered an electronic order granting the Motion to Stay and Enlarge without specifically indicating whether the briefing deadline pursuant to Fed. R. Bankr. P. 8009 was stayed or merely extended.  On October 7, 2010, in the absence of a ruling on either the motion to strike or dismiss, Cristina filed her brief.  Then, on November 29, 2010, Cristina filed the Motion for Sanctions seeking costs and damages against the Debtor for having to defend against a frivolous appeal.  The Debtor's opposition thereto followed on December 14, 2010.

---

[33] *See* Fed. R. Bankr. P. 9011(c)(3) ("Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.").

[34] I note that the arguments asserted on appeal are substantively similar to those raised in the Response.  *Cf. In re Hermosilla*, 2011 WL 1100470 at *7-8 with Response at 1-10.

[35] *See* Fed. R. Bankr. P. 8009(a)(1) (requiring the appellant to serve and file a brief within 14 days after entry of the appeal on the docket).

On March 21, 2011, the District Court entered a Memorandum and Order dismissing the Appeal for failure to comply with Fed. R. Bankr. P. 8009.[36]  Despite the Appeal's dismissal on procedural grounds, the District Court nonetheless addressed its merits in connection with the Motion for Sanctions.[37]  The District Court found that the Appeal was "frivolous *in toto*, as each and every one of the arguments he presents is completely unsupported by fact or law."[38]  Moreover, because the Appeal was "so divorced from proper factual or legal support," the District Court found "that it warrant[ed] the imposition of sanctions pursuant to Federal Rule of Bankruptcy Procedure 8020" and remanded the matter to this Court for a determination of the amount.[39]

Upon dismissal of the Appeal, I resumed consideration of the outstanding order to show cause with respect to the arguments he advanced in this Court prior to the Appeal and, consistent with the District Court's Order of Remand, ordered Attorney Brown to file a fee application for the costs associated with the defense of the Appeal by April 12, 2011.  Attorney Brown filed the Fee Application with an accompanying affidavit on April 7, 2011 seeking an award of attorney's fees "between $23,672.75 and $16,221 . . . against [the Debtor] and/or his counsel."[40]  On May 2, 2011, Attorney Baker moved for leave to submit a response to the Fee Application on his own behalf, which I granted the following day.  Through his "Response to Fee Application," which

---

[36] *Hermosilla v. Hermosilla (In re Hermosilla)*, No. 10cv11195-NG, 2011 WL 1100470 (D. Mass. Mar. 21, 2011).

[37] *In re Hermosilla*, 2011 WL 1100470 at *1.

[38] *In re Hermosilla*, 2011 WL 1100470 at *6.

[39] *Id.* at *5.  *See also* Fed. R. Bankr. P. 8020 (the district court may award just damages or single or double costs for a frivolous appeal).

[40] Docket No. 156 at 1-2.

was also filed on May 2, 2011, Attorney Baker asserts, *inter alia*, that the fees sought in the Fee

Application are grossly excessive.[41]  I conducted a hearing on the Fee Application on May 4,

2011, at which time Attorney Brown filed a reply to Attorney Baker's Response to Fee

Application (the "Reply") in open Court, conceding some errors identified by Attorney Baker.

Thereafter, I took the matter under advisement.

## III. <u>DISCUSSION</u>

A.  <u>Damages and Costs under Fed. R. Bankr. P. 8020</u>

Fed. R. Bankr. P. 8020, which essentially adopts Fed. R. App. P. 38,[42] provides, in

relevant part, that:

> If a district court . . . determines that an appeal from an order, judgment, or decree
> of a bankruptcy judge is frivolous, it may, after a separately filed motion . . . and
> reasonable opportunity to respond, award just damages and single or double costs
> to the appellee.[43]

The purpose of the rule is "to discourage litigants from wasting the time and resources of both

their opponents and the judicial system with arguments that are without merit."[44]  Accordingly,

---

[41] Attorney Baker did not file a response or objection to the Fee Application on behalf of his client.  Indeed, it expressly stated that "I reiterate that this is filed solely on my own behalf as it seems clear that I will be required to personally pay whatever the court determines is appropriate."  Docket No. 160 at 1 n. 1.

[42] *See* Fed. R. App. P. 38 (a court of appeals may award just damages and single or double costs to an appellee for a frivolous appeal). *See also In re Hermosilla*, 2011 WL 1100470 at *6 n. 2; *Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1, 9 (B.A.P. 1st Cir. 2009); *Great Road Service Center, Inc. v. Golden (In re Great Road Service Center, Inc.)*, 304 B.R. 547, 552 (B.A.P. 1st Cir. 2004); *Pettey v. Belanger ex rel. Belanger*, 232 B.R. 543, 549 (D. Mass. 1999).

[43] Fed. R. Bankr. P. 8020.

[44] *Transnational Corp. v. Rodio & Ursillo, Ltd.*, 920 F.2d 1066, 1072 (1st Cir. 1990).  *See Top Entertainment Inc. v. Ortega*, 285 F.3d 115, 119 (1st Cir. 2002); *E.H. Ashley & Co. v. Wells Fargo Alarm Serv.*, 907 F.2d 1274, 1280 (1st Cir. 1990).

an award of damages under Fed. R. Bankr. P. 8020 serves both to deter future conduct and compensate the aggrieved party.[45]

Once the district court determines that an appeal is frivolous and that the procedural requirements of the rule have been satisfied, it may award damages in either the form of a lump-sum payment in an amount it deems warranted or attorney's fees.[46] If the district court chooses to award attorney's fees, it may remand the matter to the bankruptcy court to determine the amount of such fees because "the bankruptcy judge is in the best position to gauge the interplay of factors and make delicate judgment calls anent fee awards."[47] Here, the District Court granted the Motion for Sanctions, finding that "[the Debtor]'s appeal is frivolous, and Cristina is deserving of remuneration for having to defend against it" and remanded the matter to me "to determine the amount."[48] To calculate an appropriate fee award, I must perform a lodestar analysis, determining a reasonable number of hours expended and multiplying them by an appropriate hourly rate for each attorney involved in the case.[49]

Before continuing, I note that pursuant to the mandate rule, I am bound by the Order of Remand and "must carry it into execution according to the mandate . . . . [and] cannot vary it, or examine it for any other purpose than execution; or give any other or further relief . . . than to

---

[45] *See, e.g., Nagle v. Alspach*, 8 F.3d 141, 145 (3d Cir. 1993) ("The purpose of Rule 38 damages is to compensate appellees who are forced to defend judgments awarded them in the trial court for appeals that are wholly without merit"); *Flouro Elec. Corp. v. Branford Assocs.*, 489 F.2d 320, 326 (2d Cir. 1973) ("Rule 38 was designed to penalize litigants for just such tactics as these and to compensate those who have been put to the expense of answering such wholly frivolous appeals").

[46] *In re Hermosilla*, 2011 WL 1100470 at *9; *In re Great Road Service Center, Inc.*, 304 B.R. at 553.

[47] *In re Hermosilla*, 2011 WL 1100470 at *8 n. 9; *In re Great Road Service Center, Inc.*, 304 B.R. at 552.

[48] Docket No. 153; *In re Hermosilla*, 2011 WL 1100470 at *9.

[49] *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Furtado v. Bishop*, 635 F.2d 915, 920 (1st Cir. 1980).

settle so much as has been remanded."[50]   Indeed, I must "implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces."[51]   Therefore, having thoroughly reviewed the District Court's Memorandum and Order, as well as the Motion for Sanctions and its supporting memorandum, I find that awarding damages against Attorney Baker for the frivolous appeal is both contrary to and beyond the scope of the Order of Remand.   The Motion for Sanctions, unlike the Fee Application filed here, only requested an "award of just damages . . . against the *defendant and appellant, Alex Hermosilla*," without reference to Attorney Baker.[52]   In the absence of contrary language in the Memorandum and Order, I must conclude that the District Court granted the relief requested in the Motion for Sanctions, namely, an award of damages solely against the Debtor.   In any event, the mandate was simply "to determine the amount" of damages and not direct who is liable for them.[53]

Because it appears Attorney Baker is not liable for damages pursuant to the District Court's Memorandum and Order, I need not consider his Response to Fee Application, which he filed solely on his own behalf.   No response or objection was filed on behalf of the Debtor because Attorney Baker was apparently under the impression that he would be required to

---

[50] *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895).

[51] *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994).   *See Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 249 F.3d 564, 570 (6th Cir. 2001); *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995); *City Pub. Serv. Bd. v. General Elec. Co.*, 935 F.2d 78, 82 (5th Cir. 1991).

[52] Motion for Sanctions, No. 1:10-cv-11195-NG, Docket No. 18 at 1 (emphasis added).   Even the memorandum in support of the Motion for Sanctions contains only three passing references regarding the appropriateness of imposing sanctions against Attorney Baker.

[53] Attorney Baker may, of course, volunteer to pay such damages.

personally pay any fees I deem appropriate.[54]   Nevertheless, even in the absence of an objection, I have an independent obligation to examine the Fee Application to determine the amount of attorney's fees reasonably incurred in defense of the Appeal.

Through the Fee Application, Attorney Brown requests attorney's fees for 93.36 hours that he and his associate, Lisa Vecchio ("Attorney Vecchio"), spent defending against the Appeal.   Attorney Brown, who is the principal of his firm and has had extensive litigation experience since having been admitted to the bar in 1978, spent approximately 35.35 hours on the Appeal, while Attorney Vecchio, for whom no biographical information was provided, billed approximately 57.01 hours.   In his affidavit, Attorney Brown states that both attorneys charged an hourly rate of $250, but curiously seems to suggest that a 50% discount could be applied to Attorney Vecchio's time.   He further indicates that any claim for costs have been waived by Cristina.   For this reason, Attorney Brown requests $23,629.75, but asserts that an amount of not less than $16,221 is warranted.

From the outset, several reductions are warranted by Attorney Brown's own admission. First, despite having waived any claim for costs, the Fee Application includes expenses of $81.25.   Second, the time records attached to the Fee Application contain six entries totaling 9.17 hours that that were billed at $300 per hour, rather than the hourly rate of $250.   Third, 1.5 hours

---

[54] While it may have been was reasonable under the circumstances for Attorney Baker to file a response on his own behalf, it is inexcusable that he did not file one on behalf of his client.  Though couched in terms of taking responsibility, his actions are troubling.  At best, they  reflect the continued negligence that has plagued his representation of the Debtor in this matter in that even a cursory review of the Motion for Sanctions would have revealed that creditor was seeking relief solely against the Debtor and not Attorney Baker.  At worst, Attorney Baker's actions could be construed as naked self-preservation.

15

were spent on a Rule 11 motion that was never filed and appears unrelated to the Appeal. Accordingly, I will begin by decreasing the Fee Application by $914.75.[55]

Next, while Attorney Brown's rate of $250 per hour is reasonable given his experience, I have no information regarding that of his associate, Attorney Vecchio. Without such support, I cannot find that an hourly rate of $250 is reasonable. Therefore, I will accept Attorney Brown's invitation and discount Attorney Vecchio's hourly rate to $125. This results in a further reduction of the Fee Application in the amount of $6,970.[56]

Turning to the reasonableness of the time spent, I find that several time entries are insufficiently described to warrant the fees requested. As I have previously stated:

> A deficient fee application is filed at the applicant's peril. "Reduction of compensation is appropriate where time records inadequately describe services, provide insufficient detail, or are incomprehensible. The subject matter or purpose of meetings, letters, telephone conferences, and office conferences must be set forth." Failure to do so may result in denial or reduction of compensation for the task, as the Court cannot find services reasonable and necessary without disclosure of the need and purpose of the task.[57]

On June 18, 2010, and again June 25, 2010, Attorney Brown billed .17 hours for "Letter/Email to Client." Though *de minimis*, without more I cannot find that these entries related to the Appeal, and must strike them. Additionally, on September 1, 2010, Attorney Vecchio billed 3.83 hours for "Review transcript and pleadings from bankruptcy Court; Researc [sic]." Particularly where relatively few pleadings were filed and the hearing transcript was only twenty-one pages long,

---

[55] $81.25 (expenses) + $450 (1.5 hours at an hourly rate of $300 for Rule 11 motion) + $383.50 (reducing hourly rate for 7.67 hours by $50) = $914.75.

[56] 55.76 hours (previously reduced by 1.25 hours) x $125 = $6,970.

[57] *In re McMullen*, No. 00-10151-WCH, 2009 WL 530296 *28 (Bankr. D. Mass. Feb. 18, 2009) (*quoting In re Smuggler's Beach Properties, Inc.*, 149 B.R. 740, 743 (Bankr.D.Mass.1993)) (footnotes omitted).

more detail is required to justify nearly four billable hours.  Therefore, I will reduce this entry by

2.83 hours.  These adjustments decrease the Fee Application by another $438.75.[58]

Factoring all these reductions into account, Attorneys Brown and Vecchio billed 34.76

and 52.93 hours on the Appeal, respectively, or 86.69 hours total.  Breaking this time down into

task categories, this amounts to approximately 4.5 hours researching and drafting the motion to

dismiss the Appeal, 3.17 hours performing an initial review of the Debtor's appellate brief, 62.94

hours researching and drafting Cristina's appellate brief, and 16.08 hours researching and

drafting the Motion for Sanctions and supporting memorandum.  While spending 62.94 hours

researching and drafting an appellate brief may seem grossly excessive, I find that it was

reasonable under the circumstances.  The Debtor's appellate brief, which is substantively similar

to the Response, bears little resemblance to Memorandum filed prior to the Judgment.  As

explained by Attorney Brown in the Reply:

> Attorney Baker raised new issues for his client on appeal, forcing Cristina to not
> only argue the new issues, but to demonstrate that these new points had been
> waived because they had not been raised in the court below.[59]

I further note that Attorney Brown tried to avoid drafting a brief at all by filing a motion to

dismiss the Appeal and the Motion to Stay and Enlarge time to file Cristina's brief.  As it appears

only an extension was granted, he was left with no other option in order to preserve his client's

rights.  Therefore, I find that Attorneys Brown and Vecchio reasonably spent a total of 86.69

---

[58] [(.17 + .17)  hours x $250 = $85 ("Letter/Email to Client")] + [2.83 hours x $125 = $353.75 ("Research")] = $438.75.

[59] Docket No. 165 at 10.  Attorney Brown further noted "[the Debtor]'s habit of misrepresenting the holdings of cases he cites," requiring him to read the cases he cited.  *Id.*

hours defending against the Debtor's frivolous appeal and award Cristina attorney's fees in the amount of $15,306.25.[60]

B. Sanctions under Fed. R. Bankr. P. 9011

1. Applicable Law

Fed. R. Bankr. P. 9011 "emphasizes responsible behavior on the part of [attorneys]" and requires them "to conduct [themselves] in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system."[61] "To achieve these goals, Rule 11 requires attorneys to take responsibility for the claims and defenses they represent . . . ."[62] Fed. R. Bankr. P. 9011 provides in relevant part:

> (b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> * * *
>
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . .[63]

---

[60] (34.76 hours x $250 = $8,690) + (52.93 hours x $125 = $6,616.25) = $15,306.25.

[61] *Featherston v. Goldman (In re D.C. Sullivan Co., Inc.)*, 843 F.2d 596, 598 (1st Cir. 1988), *aff'd in part on rehearing en banc*, 878 F.2d 1478 (1989). Because Fed. R. Bankr. P. 9011 is derrived from Fed. R. Civ. P. 11, the United States Court of Appeals for the First Circuit has explained that "Rule 11 jurisprudence is largely transferrable to Rule 9011 cases." *Id.*

[62] *Cruz v. Savage*, 896 F.2d 626, 630 (1st Cir. 1990).

[63] Fed. R. Bankr. P. 9011(b)(2).

18

Under Fed. R. Bankr. P. 9011, the focus is not whether the claim asserted was frivolous, but whether the attorney conducted an adequate inquiry into the facts and law before filing the claim.[64] "Put bluntly, a pure heart no longer excuses an empty head."[65] The First Circuit has explained that:

> Prior to signing a pleading, a litigant must fulfill the "affirmative duty to conduct a reasonable inquiry into the facts and the law." [*Business Guides, Inc. v. Chromatic Communications Enterps., Inc.*, 498 U.S. 533, 111 S.Ct. 922, 933, 112 L.Ed.2d 1140 (1991)]. Whether or not this duty has been breached depends on the objective reasonableness of the litigant's conduct under the totality of the circumstances. *See id.*; *see also Lancellotti v. Fay*, 909 F.2d 15, 18-19 (1st Cir. 1990).

> To determine whether a litigant made a reasonable inquiry into the facts, the district court should examine all the circumstances, including the complexity of the subject matter, the party's familiarity with it, the time available for inquiry, and the ease (or difficulty) of access to the requisite information. *See Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, 1435 (7th Cir. 1987); *Century Prods., Inc. v. Sutter*, 837 F.2d 247, 250-51 (6th Cir. 1988); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir.1988) (en banc); *see also* Fed. R. Civ. P. 11, Advisory Committee's Notes, 97 F.R.D. 198, 199 (1983). Litigants, like counsel, are to be held "to standards of due diligence and objective reasonableness-not perfect research or utter prescience." *Maine Audubon* [*Soc. v. Purslow*], 907 F.2d [265,] 268 [1st Cir. 1990]. Furthermore, for Rule 11 purposes, a party's pleading must be judged on the basis of what was reasonable when the pleading was filed rather than in hindsight. *See Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990); *Davis v. Crush*, 862 F.2d 84, 88 (6th Cir. 1988).[66]

---

[64] *See Matter of Excello Press, Inc.*, 967 F.2d 1109, 1111-1112 (7th Cir. 1992); *Parker v. Boston Univ. (In re Parker)*, 334 B.R. 529, 538 (Bankr. D. Mass. 2005).

[65] *Lancellotti v. Fay*, 909 F.2d 15, 19 (1st Cir. 1990). *See In re Hein*, 341 B.R. 903, 905 (Bankr. N.D. Ind. 2006) ("Stupidity–acting without sufficient forethought– is a legitimate basis for imposing sanctions upon an attorney.").

[66] *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1425 (1st Cir. 1992).

With this in mind, it is clear that "[a] violation of Rule 11 . . . might be caused by inexperience, incompetence, willfulness, or deliberate choice."[67]

The United States Bankruptcy Appellate Panel for the First Circuit has further explained that:

> A legal argument is not warranted by existing law if it is based on legal theories that are plainly foreclosed by well-established legal principles and authoritative precedent, unless the pleading plainly argues for a reversal or change of law and presents a nonfrivolous argument to support that position. . . .
>
> * * *
>
> However, a legal argument need not ultimately prevail in order to be warranted by existing law. . . .   In particular, courts generally do not conclude that an unsuccessful argument is not warranted by existing law where the argument involves unsettled or highly complex law.[68]

Nonetheless, Fed. R. Bankr. P. 9011 should not be imposed "to chill *reasonable* creativity on counsel's part."[69]   Counsel is free to argue for an extension or modification of existing law, but such an argument is frivolous if no reasonable argument can be advanced.[70] Indeed, the First Circuit has held that counsel is not necessarily required to make the reasonable argument so long as a competent attorney could, in good faith, after a reasonable inquiry.[71] Despite this, "[t]he court should take into account the extent to which [counsel] has researched

---

[67] *Sylver v. Sec. Pac. Servs. (In re Sylver)*, 214 B.R. 422, 428 (B.A.P. 1st Cir. 1997) (*quoting Cruz v. Savage*, 896 F.2d at 631).

[68] *White v. Burdick (In re CK Liquidation Corp.)*, 321 B.R. 355, 362-363 (B.A.P. 1st Cir. 2005) (emphasis added) (citations omitted).

[69] *Maine Audubon Soc. v. Purslow*, 907 F.2d at 268 (emphasis added).

[70] *In re CK Liquidation Corp.*, 321 B.R. at 364.

[71] *Kale v. Combined Ins. Co. of America*, 861 F.2d 746, 759 (1st Cir. 1988).  Effectively, where a reasonable inquiry would have bolstered counsel's contentions, sanctions are inappropriate.

the issue and found some support for his theories in secondary materials,"[72] but "Rule 11 can also be violated when a minimal amount of research, even a cursory reading of the relevant treatises and cases, should have revealed . . . that [the] legal position was without merit."[73]

## 2. The Response

From the outset, I note that the Response is in many respects just as troubling as the Memorandum that prompted the present show cause order.  Although he purports to clarify and bolster the arguments advanced in the Memorandum, Attorney Baker asserts several new theories in the Response, some of which are inconsistent with his prior position.  Moreover, his citations to authority appear to be based entirely on their result without regard to the facts or rationales of those decisions.  Not infrequently, Attorney Baker draws conclusions about the facts and rationales of the cases he cites that are unsupported or expressly contrary to those decisions.  In sum, the Response further demonstrates that his inquiry into the facts and law in this case was not objectively reasonable.

### a.   Advancing an Argument Contrary to Express Provisions of the Bankruptcy Code Without Supporting Authority

In the Memorandum, Attorney Baker stated unequivocally that "[t]he statute of limitations is <u>not</u> tolled because of [the Debtor]'s bankruptcy," and cited to the *Buker* case.[74]  As discussed in the Decision, this statement is patently false.[75]  Section 108(c) of the Bankruptcy Code expressly provides for the tolling of an unexpired statute of limitations during the pendency

---

[72] *In re CK Liquidation Corp.*, 321 B.R. at 364.

[73] *Anderson v. McGowan (In re Anderson)*, 128 B.R. 850, 856 (D.R.I. 1991).

[74] Memorandum at 4 (underline in original).

[75] *In re Hermosilla*, 430 B.R. at 20.

of a debtor's bankruptcy.[76]  As the Debtor filed his petition less than two years after the Assault, the three year statute of limitations provided under Massachusetts law had not expired prior to the petition date and is clearly tolled by 11 U.S.C. § 108(c).[77]

Admittedly, the *Buker* case includes language stating that "[t]he plaintiffs do not cite any case or statute which holds that the statute of limitations is tolled during the period that the assets of the bankrupt are under the control of a trustee in bankruptcy."[78]  Nonetheless, the clarifying footnote at the end of that sentence states as follows:

> The *Bankruptcy Act* provides that the trustee in bankruptcy may bring suit on behalf of the debtor's estate within two years of the time the debtor was adjudicated bankrupt if, at the time the debtor filed for bankruptcy, the claim was not time barred. 11 U.S.C. § 29(e) (1976). (In 1978 the Bankruptcy Act was substantially altered. *See now 11 U.S.C. § 108[a]* [Supp. V 1981].) *Kagan v. Levenson*, 334 Mass. 100, 102-103, 134 N.E.2d 415 (1956). The plaintiffs do not suggest that § 29(e), obviously enacted to encourage an orderly marshalling of an estate in bankruptcy, has any relevance to the contention that they advance before this court.[79]

Although the *Buker* case may appear to support Attorney Baker's position at first glance, the footnote to the operative language should have put him on notice that the ruling was based on pre-Bankruptcy Code law and that 11 U.S.C. § 108 substantially altered that scheme.[80]

---

[76] *See* 11 U.S.C. § 108(c).

[77] *See* Mass. Gen. Laws ch. 260, § 2A.

[78] *Buker v. Nat'l Mgmt. Corp.*, 16 Mass. App. Ct. at 40.

[79] *Id.* at 40 n.6 (emphasis added).

[80] The District Court further noted:

> [W]hat *Buker* actually held is that a *debtor's* tort claims are not tolled during the *entire* period that his assets are under the control of a trustee in bankruptcy, but only for two years after the debtor was adjudicated bankrupt, provided that the claims were not already time-barred at the time the debtor filed for bankruptcy. 16 Mass.App.Ct. at 40–41, 448 N.E.2d 1299. The court reasoned that one purpose of the bankruptcy statutes is to render to the creditors of an insolvent debtor "all for which they may reasonably hope," and that "[t]olling the statute of limitations during the entire

In the Response, Attorney Baker contends that *Buker*'s reliance on pre-Bankruptcy Code law is "a distinction without a difference since the Bankruptcy Act had a provision that seems to be identical in effect to § 108," and cites to section 661 of the Bankruptcy Act.[81]  This argument is curious as *Buker* does not reference section 661 of the Bankruptcy Act, but section 29(e),[82] and in any event still does not explain why he failed to acknowledge 11 U.S.C. § 108 as controlling, particularly when it was cited in that case.  Therefore, I find Attorney Baker's citation of *Buker* and his failure to cite 11 U.S.C. § 108(c) reflects that his inquiry into the legal merit of this defense was objectively unreasonable.

While Attorney Baker concedes that the statute of limitations defense was the weakest of those asserted, he maintains that the Decision's result is not as certain as suggested.[83]  In support of his contention that "[i]t is not wholly certain that a Massachusetts state court would apply 11 U.S.C. § 108,"[84] Attorney Baker cites *Fox of Boylston Street Ltd. P'ship v. Mayor of Boston*.[85] He explains the *Fox* case as follows:

---

> period of bankruptcy would provide 'bonus time' to the debtor of no apparent benefit to his creditors." *Id.* Thus, if the holding of *Buker* can be stretched to provide *any* guidance for the determination of the present case, it is that the statute of limitations for Cristina's tort claims should be tolled, because the Bankruptcy Code should be construed in favor of those to whom the debtor is indebted.

*In re Hermosilla*, 2011 WL 1100470 at *7 n. 7 (emphasis in original).

[81] Response at 4.  *See also Davis v. Security Nat. Bank of Nevada*, 447 F.2d 1094, 1096 n. 2 (9th Cir. 1971) ("§ 661. Suspension of statutes of limitation, etc. All statutes of limitation affecting claims and interests provable under this chapter and the running of all periods of time prescribed by this title in respect to the commission of acts of bankruptcy, the recovery of preferences, and the avoidance of liens and transfers shall be suspended while a proceeding under this chapter is pending and until it is finally dismissed.").

[82] *Buker v. Nat'l Mgmt. Corp.*, 16 Mass. App. Ct. at 40 n. 6.

[83] Response at 3.

[84] *Id.*

[85] *Fox of Boylston Street Ltd. P'ship v. Mayor of Boston*, 418 Mass. 816, 641 N.E.2d 1311 (1994).

23

> Fox acquired the right to develop certain land from the original developer's bankruptcy trustee. When the defendants refused to convey the land to him, he sued in Superior Court. The Superior Court judge allowed the defendant's motion for summary judgment on the basis that the statute of limitations had run. After final judgment entered, Fox moved for relief from judgment under Mass. R. Civ. P. 60(b), claiming that 11 USC §108(a) extended the time for him to bring suit as the successor in interest to the bankruptcy trustee. The Superior Court judge, however, rejected the argument, and the Supreme Judicial Court found that he did not abuse his discretion in doing so. . . . <u>Fox</u> is not precisely on point with this case, but it makes that point that the state court could decline to apply §108 in an appropriate case . . . .[86]

Attorney Baker is correct that 11 U.S.C. § 108 was not applied in the *Fox* case, but the principle he derives from it, namely, that state courts are free to disregard 11 U.S.C. § 108, is too broad. As explained by the Supreme Judicial Court, the reason why the trial judge did not abuse his discretion was that 11 U.S.C. § 108 was not raised until six months after the entry of a final judgment.[87]  Accordingly, the *Fox* case provides little support for his position, particularly in light of Cristina having raised 11 U.S.C. § 108(c) in her memorandum.[88]  Regardless, Attorney Baker's argument in the Memorandum was not that the 11 U.S.C. § 108(c) might not be applied by a state court to toll the statute of limitations, but that the statute of limitations simply was not tolled by the Bankruptcy Code at all.[89]

Lastly, Attorney Baker asserts that "[a] statute of limitations does not necessarily bar the application of laches" and states that "[t]he record of this case, I believe, is the very paradigm of

---

[86] Response at 3-4.

[87] *Fox of Boylston Street Ltd. P'ship v. Mayor of Boston*, 418 Mass. at 819.

[88] *In re Hermosilla*, 430 B.R. at 18.

[89] Although the First Circuit applies the objective standard liberally, the argument now advanced is far too attenuated to be considered consistent with the earlier one.

24

unreasonable delay on the plaintiff's part. . . ."[90]  This is beside the point, however, because laches is an entirely new theory that he did not argue in the Memorandum.  Even assuming, *arguendo*, that Cristina's personal injury claim was barred by laches,[91] that analysis is completely different and independent of the statute of limitations.  Ultimately, the merit of a defense that was not advanced does not justify the advancement of another without merit.

In sum, Attorney Baker has provided no legal basis for the advancement of a statute of limitations defense in this case.  Moreover, his failure to cite the controlling statute referenced in the very case he relied upon demonstrates that his inquiry into this argument was not objectively reasonable.  Therefore, I find that Attorney Baker violated Fed. R. Bankr. P. 9011(b)(2) by asserting the statute of limitations defense.

> b.  Advancing an Argument Contrary to Well-Established Legal Precedent Regarding the Jurisdiction of the Massachusetts Probate Court Without Supporting Authority

With respect to the waiver defense, Attorney Baker stated in the Memorandum that "where a divorce court takes into consideration and makes findings on tort-based issues in making decisions on alimony and support, those findings are *res judicata*," and cited the *Apostolicas Properties Corp.* case.[92]  Therefore, he contended, because tort based issues were presented to the Probate Court, as evidenced by reference to Cristina's "alleged" injuries in the

---

[90] Response at 4.

[91] On Appeal, the District Court noted that the Debtor "cites no cases in which a Massachusetts court has declined to apply Section 108(c) on the basis of laches or any other ground, nor does he set forth a persuasive argument for why a Massachusetts court might do so in the present case."  *In re Hermosilla*, 2011 WL 1100470 at *7 n. 7.

[92] Memorandum at 4-5.

Probate Court's memorandum, she has already been compensated and waived her personal injury claim.[93]  In the Decision, I rejected these arguments, explaining that:

> the Supreme Judicial Court of Massachusetts rejected this argument under circumstances similar to those presented in this case. In *Heacock v. Heacock*, the defendant asserted a res judicata defense to his former spouse's tort action for injuries stemming from domestic abuse, arguing that the abuse was presented in the divorce proceedings and the plaintiff failed to disclose the pending tort claim to the Probate Court. The Supreme Judicial Court held res judicata did not apply, stating:

>> A tort action is not based on the same underlying claim as an action for divorce. *Accord*, *Goldman v. Wexler*, 122 Mich.App. 744, 748, 333 N.W.2d 121 (1983); *Aubert v. Aubert*, 129 N.H. 422, 529 A.2d 909, 911-912 (1987); *Lord v. Shaw*, 665 P.2d 1288, 1291 (Utah 1983). The purpose of a tort action is to redress a legal wrong in damages; that of a divorce action is to sever the marital relationship between the parties, and, where appropriate, to fix the parties' respective rights and obligations with regard to alimony and support, and to divide the marital estate. Although a judge in awarding alimony and dividing marital property must consider, among other things, the conduct of the parties during the marriage, G.L. c. 208, § 34 (1986 ed.), the purposes for which these awards are made do not include compensating a party in damages for injuries suffered.... *The plaintiff could not have recovered damages for the tort in the divorce action, as the Probate Court does not have jurisdiction to hear tort actions and award damages.* G.L. c. 215, §§ 3, 6 (1986 ed.). *See*, *e.g.*, *Prahl v. Prahl*, 335 Mass. 483, 140 N.E.2d 480 (1957).

Although *Heacock* is directly on point, the Debtor instead relies on the *Apostolicas Properties Corp.* case, asserting that it stands as an exception to the general rule.  This reasoning is flawed as that case involved an equity suit arising from property rights determined by the Probate Court.  Moreover, in distinguishing *Heacock*, the Court of Appeals expressly recognized that no property issues were implicated by the tort claims in *Heacock* such as to compel Mrs. Heacock to assert them in the divorce proceeding.  As such, neither case supports the Debtor's position. Therefore, I find that Cristina did not waive her

---

[93] *Id.* at 5.

personal injury claim by virtue of the Stipulation because the Probate Court lacked jurisdiction over the claim.[94]

In the Response, Attorney Baker asserts that the *Apostolicas Properties Corp.* case is distinguishable from *Heacock*, and that his argument was not contrary to both cases, but was instead a good faith argument for the extension or modification of existing law within the meaning of Fed. R. Bankr. P. 9011.[95]  In support, he relies on footnote six of the *Apostolicas Properties Corp.* case in which the Massachusetts Appeals Court quoted heavily from the *Heacock* decision.  In particular, Attorney Baker points to the following passage:

> Because a judge in awarding alimony and dividing marital property must consider a number of factors, G.L. c. 208, § 34, and the judge who presided over the Heacocks' divorce action did not make any findings of fact to support his judgment, we cannot say that the judge necessarily **resolved any issue relating to the defendant's assault of the plaintiff**.[96]

He contends that "[b]y negative inference, it seems clear that the divorce judge *could have* resolved such issues, albeit not as a "tort" cause of action independent of the divorce."[97]

Attorney Baker further notes that, like the present case, the divorce in the *Apostolicas Properties Corp.* case involved allegations of cruel and abusive treatment[98] and that "[i]t is a fair inference . . . that the <u>Richman</u> divorce court did take into consideration the alleged cruel and abusive

---

[94] *In re Hermosilla*, 430 B.R. at 21 (*quoting Heacock v. Heacock*, 402 Mass. at 24) (footnotes omitted).  *See In re Hermosilla*, 2011 WL 1100470 at *7 (finding that "the SJC has already rejected [the Debtor's] argument in a case quite similar to the one at bar.").

[95] Response at 6.

[96] *Id.* at 5 (*quoting Heacock v. Heacock*, 402 Mass. at 25) (emphasis added by Attorney Baker).

[97] *Id.* at 5 (emphasis in original).

[98] *See Richman v. Richman*, 28 Mass. App. Ct. 655, 555 N.E.2d 243 (1990).

27

treatment, and made decisions relating to alimony and support accordingly."[99]    Moreover, he asserts that "both Heacock and Apostolicas suggest that where the divorce court judge made findings relative to the conduct of the parties in determining, e.g., alimony and support, relitigation of the issue would be barred by issue preclusion."[100]    Therefore, in light of the Probate Court's reference to "alleged" injuries, Attorney Baker argues that it seems clear that the Probate Court resolved the issue.[101]

From the outset, I note that the *Apostolicas Properties Corp.* case is distinguishable from *Heacock*, but not in the way suggested by Attorney Baker.    Although the *Richman* divorce proceeding involved an allegation of cruel and abusive treatment as a ground for divorce, a review of the Massachusetts Appeals Court's decision reveals only a passing reference to an alleged rape and does not expressly make findings with respect to any abuse or how it necessarily affected the property distribution.[102]    There is simply nothing to support Attorney Baker's inference that cruel and abusive treatment was considered and resolved with decisions relating to alimony and support.    Moreover, as I explained in the Decision, the *Apostolicas Properties Corp.* case did not concern cruel and abusive treatment, but an equity suit regarding property rights determined by the Probate Court.[103]    Therefore, because the case did not implicate personal injury claims over which the Probate Court had no jurisdiction, the

---

[99] Response at 5.

[100] *Id.* at 6.

[101] *Id.*

[102] *Richman v. Richman*, 28 Mass. App. Ct. at 659.

[103] *In re Hermosilla*, 430 B.R. at 21.  S*ee Apostolicas Properties Corp. v. Richman*, 28 Mass. App. Ct. at 672, 678.

28

Massachusetts Appeals Court concluded that the issues involved may have been preclusively decided by the Probate Court.[104]

As explained above, the language Attorney Baker relies on in his Response actually comes from the *Heacock* case.  That case, which was premised on a personal injury claim, involved two theories - claim preclusion and issue preclusion.  In the Decision, I explained that the Supreme Judicial Court held that claim preclusion, or res judicata, did not apply because the Probate Court lacks jurisdiction over personal injury claims.[105]  Here, Attorney Baker relies on the next passage of the Supreme Judicial Court's ruling in which they address issue preclusion, also known as collateral estoppel.[106]  While I concede that his negative inference, namely, that factual issues relating to tort claims may, in some circumstances, be preclusively decided by the Probate Court, is sound, Attorney Baker's application is far too broad and conflates collateral estoppel with res judicata.  Effectively, he is attempting to preclude the claim under res judicata because the issues relating to it were finally decided under principles of collateral estoppel.

Collateral estoppel requires, among other things, that "the issue in the prior adjudication is identical to the issue in the current litigation."[107]  That is not the case here.  The issue in the Probate Court was the appropriateness of alimony, which implicated the Debtor's abusive conduct in as much as the Probate Court found it "resulted in a diminution of [Cristina's] earning capacity because of the injury to her back thereby precluding her from standing for lengthy

---

[104] *Apostolicas Properties Corp. v. Richman*, 28 Mass. App. Ct. at 678.

[105] *In re Hermosilla*, 430 B.R. at 21.

[106] *Heacock v. Heacock*, 402 Mass. 25.

[107] *McHeffey v. Pereira (In re Pereira)*, 428 B.R. 276, 281 (Bankr. D. Mass. 2010) (*citing Alba v. Raytheon Co.*, 441 Mass. 836, 843, 809 N.E.2d 516, 521 (2004)).

29

periods of time in her capacity as a hair stylist."[108]   Generally, a diminution in future earning

capacity might be one damage component of a personal injury claim.[109]  Given the jurisdiction of

the Probate Court and the context of those findings, however, the purpose of the alimony award

was to provide adequate post-marriage support, not compensate Cristina for her injuries.[110]  This

is clear because the Supreme Judicial Court has expressly stated that while the Probate Court

must consider "the conduct of the parties during the marriage . . . the purpose for which

[alimony] awards are made do not include compensating a party in damages for injuries

suffered."[111]  I further note that Attorney Baker's confusion between collateral estoppel and res

judicata stems largely from his faulty assumption that the issues were identical.

Again, because Attorney Baker's arguments are contrary to both *Heacock* and the

*Apostolicas Properties Corp.* case, the very cases he cited, his inquiry was not objectively

reasonable.  This is particularly the case where his arguments rely on unsupported assumptions

regarding those decisions.  Moreover, he could not have made a good faith argument for the

modification or extension of existing law because this Court lacks jurisdiction to modify

Massachusetts state law in the face of an unambiguous ruling by the Supreme Judicial Court.

Accordingly, I find these arguments violated Fed. R. Bankr. P. 9011(b)(2).

---

[108] Plaintiff's Ex. F, Docket No. 42-6.

[109] I note, however, that Cristina did not define her claim in the Amended Joint Pre-Trial Statement to include diminution in future earning capacity.  *See* JPTS at ¶¶ 2:4-5.  Therefore, even if she was "compensated" on this basis, her claim remains distinct.

[110] *See Freedman v. Freedman*, 49 Mass. App. Ct. 519, 523, 730 N.E.2d 913 (2000) ("The purpose of alimony is to provide support.").

[111] *Heacock v. Heacock*, 402 Mass. at 24.

c.  Advancing an Argument Contrary to *Geiger* and its Progeny Without
Supporting Authority

At the March 17, 2010 hearing, Attorney Baker asserted that an issue remained as to
whether the Debtor intended to cause the injury *that resulted*.[112]  Citing only *Kawaauhau v.
Gieger*,[113] he repeated this argument several times in the Memorandum: "[t]he specific <u>injury</u>
that resulted must have been *intended*"[114]; "the resulting <u>injury</u> must be what was intended"[115];
"she has not alleged any facts from which the court could conclude that the debtor acted with the
requisite <u>intent</u> to cause the specific <u>injury</u> complained of or with substantial certainty that the
injury would occur."[116]  In light of the admissions in the Amended Joint Pre-Trial Statement and
the language and emphasis used to explain his position, I understood Attorney Baker to argue
that *Geiger* requires a debtor intend to cause the specific injury that resulted as opposed to one
that did not result or a non-specific intent to cause injury.[117]  Therefore, in the Decision, I held:

> The Debtor's assertion that he did not intend the injury that resulted is similarly
> unavailing. Not surprisingly, this argument has been advanced before other courts
> and uniformly rejected. Contrary to the Debtor's assertion, *Geiger* does not
> require a debtor intend the *specific* injury, only "the consequences of an act."
> Moreover, a vast majority of courts, citing *Geiger*'s reliance on the Restatement,
> hold that injuries resulting from intentional acts known by the debtor to be
> "substantially certain to cause injury" are nondischargeable, regardless of whether
> the debtor had a subjective intent to cause any injury at all.  No court has read
> "injury" as narrowly as the Debtor suggests, which is likely why he cites no
> supporting authority. Indeed, in the context of assaults and batteries, courts have

---

[112] Trans. March 17, 2010 at 8:10-23; 10:5-9; 12:1-24; 13:1-15; 17:5-9; 18:1-7.

[113] *Kawaauhau v. Geiger*, 523 U.S. 57 (1998).

[114] Memorandum at 2 (underline and italics in original).

[115] *Id.* at 6 (underline in original).

[116] *Id.* at 3 (underline in original).

[117] *In re Hermosilla*, 430 B.R. at 23-24.

applied a broader definition, recognizing that a debtor knows that physical violence is substantially certain to produce some significant physical harm even if the exact nature of the resulting bodily damage is not known.

Ultimately, the Debtor's argument relies completely on the absence of any description of Cristina's injuries to mask its absurdity. Nevertheless, the illusion of merit immediately disappears once it becomes clear that, in light of his admissions, he is arguing that the physical and emotional injuries that Cristina suffered as a result of the Assault were not the ones he intended to cause and were not substantially certain to occur. Based on the Debtor's actions, specifically that he "struck Cristina *with great force*, grabbed [her] by the throat and struck her head *repeatedly against the interior wall of the premises* . . . and threw [her] *with such force onto a table that the table was caused to be broken*," it is mind-boggling to contemplate a physical injury that she could have suffered that was not substantially certain to occur. This reveals his assertion for what it is: a thinly veiled attempt to create a disputed material fact and retract an admission made in the Amended Joint Pre-Trial Statement.[118]

In the Response, Attorney Baker asserts that by focusing in the word "specific," I misunderstood his argument regarding *Geiger*.[119] "Instead, the argument is that no injury was pled in the complaint and was not admitted in the joint pre-trial statement . . . . To the extent that the word 'specific' has any import in this context, it is that the injury that resulted (assuming one could be proven) must have a causation relationship to the act allegedly done by the tortfeasor."[120] Attorney Baker further states that he "apparently labored under the impression that the [issue of intent] had been 'part of the case' all along."[121]

Upon further review, I understand that Attorney Baker sought to challenge both the existence of intent to cause injury as well as the injury itself. Given that the established facts

---

[118] *Id.* (citations omitted) (emphasis in original).

[119] Response at 9.

[120] *Id.*

[121] *Id.*

foreclosed such arguments, I construed his Memorandum literally with emphasis on his repeated use of the words "specific" and "result[ing/ed]."  Frankly, the Memorandum is so poorly organized and convoluted that Attorney Baker could not have chosen better words to obscure his true meaning, particularly with the emphasis that he supplied.  All confusion would have been eliminated had he simply stated that "the injury must have been intended," rather than "[t]he *specific* injury *that resulted* must have been intended."[122]  Words have meaning and "[j]udges are not like pigs, hunting for truffles buried in briefs."[123]  Attorneys who use the English language recklessly do so at their peril as there can be no reasonable expectation that a court will decrypt their briefs in the desired way.  Nonetheless, failure to fully flesh out an argument is not, by itself, sanctionable under Fed. R. Bankr. P. 9011(b)(2).[124]

That being said, even with this clarification, Attorney Baker is still arguing contrary to admitted and established facts set forth in the Amended Joint Pre-Trial Statement which, as discussed more fully below, violates Fed. R. Bankr. P. 9011(b)(3).

> d.  Advancing Arguments Foreclosed by the Pre-Trial Order and Amended Joint Pre-Trial Statement

In the Memorandum, Attorney Baker asserted that the complaint was insufficient to state a claim and "must be dismissed" because it did not allege "that a debt exists resulting from an intentional injury. . . ."[125]  In doing so, he argued that there was no evidence of an injury and no

---

[122] Memorandum at 2 (original emphasis removed, emphasis added).

[123] *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

[124] *Kale v. Combined Ins. Co. of America*, 861 F.2d at 759.

[125] Memorandum at 1.

intent to cause the injury.[126]   In the Decision, I found that the Debtor admitted to both injury and

intent in the following passages of the Amended Joint Pre-Trial Statement:[127]

> At the time [the Debtor] committed the physical acts referenced above, he
> intended to cause and . . . did cause Cristina such physical harm that she was
> caused to seek and obtain medical care for her injuries and did cause her such
> emotional harm that she was cased [sic] to seek and obtain care for her emotional
> condition.

> Cristina became indebted for services rendered to her for her physical and
> emotional injuries and for which [the Debtor] is liable to Cristina together with
> the physical and emotional damages [the Debtor] caused Cristina.[128]

In light of these admissions, I concluded those arguments were contrary to the Pre-Trial Order

and the Amended Joint Pre-Trial Statement which expressly provide that the Amended Joint Pre-

Trial Statement supercedes all pleadings filed in the case.[129]

The core of Attorney Baker's position in the Response is that the admissions are

somehow not admitted facts.[130]   First, after noting that Cristina's attorney prepared the Amended

Joint Pre-Trial Statement and "was not particularly open to modification of his work,"[131]

---

[126] *Id.* at 1-6.

[127] *In re Hermosilla*, 430 B.R. at 22-23.

[128] JPTS at ¶¶ 2:4-5.  *See In re Hermosilla*, 2011 WL 1100470 at *8 (finding "[i]f that is not an admission of injury, it is hard to imagine what could be.").

[129] *In re Hermosilla*, 430 B.R. at 23, 26.

[130] I am reminded that the United States Court of Appeals for the Seventh Circuit previously stated that "[o]ne standard for frivolousness is risibility- *if you start laughing when repeating the argument, then it's frivolous*."  *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 934 (7th Cir. 1989) (emphasis added).

[131] Response at 7.  Although Attorney Baker asserts that this "point[] need[s] to be remembered," I find it disturbing. *Id.*  He appears to suggest that he allowed admissions to be included in the Amended Joint Pre-Trial Statement that his client did not actually admit simply because opposing counsel was "was not particularly open to modif[ying]" the draft.  *Id.*  Such inaction would constitute malpractice.  *Id.*  Moreover, had he not, in fact, agreed to the final version of the Amended Joint Pre-Trial Statement, Attorney Baker could have refused to sign it or otherwise sought relief from the Court.  Alternatively, had it been filed without his agreement, he could have filed a motion seeking to strike it for that reason.

Attorney Baker states that he was merely pointing out that the admissions in the Amended Joint Pre-Trial Statement, "being drawn from the complaint" without any discovery, were "insufficient, by themselves, to warrant summary judgment."[132]   Indeed, he argues that because the "admissions" were taken from the allegations of the complaint, all of which the Debtor denied in his verified answer, it was proper to argue the insufficiency of the unverified complaint.[133]   Attorney Baker further explains:

> My point was that there is no *evidence* of actual <u>intent</u> to injure Cristina or of [sic] "substantial certainty" that what he allegedly did would cause an injury; she relied solely on the admissions in the pre-trial statement.  I can understand how the court would regard this argument in the post-trial memorandum as wanting to retract admissions in the joint pre-trial statement. . . .
>
> * * *
>
> I think that it is incorrect to infer from the admissions in the joint pre-trial statement that there was an *intentional* injury, especially since there is no clear statement as to what injury Cristina allegedly suffered . . . .[134]

---

I note that the District Court was equally unpersuaded by this argument:

If counsel was concerned that the material contained in the [Amended Joint Pre-Trial] Statement was inaccurate in any way, or that contrary information could be revealed via depositions or other discovery, he should not have signed the Statement on behalf of his client. He cannot now argue that the [Amended Joint Pre-Trial] Statement is not binding against his client simply because at the time he signed it he was uneasy about doing so. [The Debtor's] counsel knew, or certainly should have known, that the stipulated facts contained in the [Amended Joint Pre-Trial] Statement were deemed admitted, and that those admissions would supersede the pleadings. In fact, the [Amended Joint Pre-Trial] Statement contained a section setting forth as much.

*In re Hermosilla*, 2011 WL 1100470 at *7.

[132] Response at 7.  Even if Attorney Baker had only been arguing that the admissions, though true, were insufficient to form a basis for summary judgment, which is doubtful given the emphasis placed in the Response on the "unverified" source of those "admissions" and his purported ability to rebut them, he still would not have asserted that "the plaintiff has failed to state a cause of action and the count must be *dismissed*."  Memorandum at 1 (emphasis added).

[133] Response at 8.

[134] Response at 9-10 (italics and underline in original).

These arguments are baffling and ignore the fundamental difference between an allegation and an admission. An allegation is simply "a party's formal statement of a factual matter as being true or provable, without its [sic] having yet been proved,"[135] while an admission is "an acknowledgment that facts are true."[136] While the Debtor may have properly denied the allegations in the complaint, once they were listed in the Amended Joint Pre-Trial Statement as admissions, he conceded their truth without the need for evidence. I cannot comprehend why Attorney Baker believes discovery is a prerequisite to an admission as its fundamental purpose is to avoid discovery and submission of evidence for facts not in dispute.[137] Regardless, I did not *infer* an intentional injury as he suggests; it was an *established fact*.

Nonetheless, Attorney Baker argues that "admissions or omissions in a joint pre-trial statement are not necessarily fatal to a party,"[138] and states that "as the BAP said in In re Byers, 304 B.R. 1 (1st Cir. BAP 2004), the court (and, it seems, the parties) may go beyond the admissions in the pre-trial statement when at trial. . . ."[139] He continues: "[f]urthermore, there must be an injury, and I maintain that nothing in the pre-trial statement admits an *intentional* injury *beyond the possibility of rebuttal* at trial."[140] Not only are these statements manifestly

---

[135] *Black's Law Dictionary* 86 (9th ed. 2009).

[136] *Black's Law Dictionary* 53 (9th ed. 2009).

[137] *See* footnote 130, *supra*.

[138] Response at 8.

[139] *Id.* at 9. *See Nickless v. Conley (In re Byers)*, 304 B.R. 1 (B.A.P. 1st Cir. 2004).

[140] Response at 10 (emphasis in original). In the Response, Attorney Baker states that "[t]here are other possible explanations" than a finding that the Debtor intended to injure Cristina, suggesting, for example, that "it is possible that [the Debtor] believed he was defending himself." *Id.* No other explanation, however, was ever raised prior to the order to show cause. *See In re Hermosilla*, 2011 WL 1100470 at *8 ("[The Debtor] never affirmatively argued at the hearing before the Bankruptcy Court or in the memorandum opposing summary judgment that he submitted to the Bankruptcy Court that [he] was acting in self defense."). Moreover, Attorney Baker does not even argue that

false and, frankly, illogical, they completely ignore the Panel's rationale underlying the *Byers* decision.

In the *Byers* case, the Chapter 7 trustee brought an action seeking to avoid a fraudulent transfer under Massachusetts law.[141]   The trustee alleged that the transfer was both actually and constructively fraudulent, but omitted the issue of constructive fraud from the joint pre-trial statement.[142]   Nonetheless, both the admissions and contested facts in the joint pre-trial statement suggested that both parties understood that the trustee intended to pursue the constructive fraud claim.[143]   At the conclusion of trial, the trustee, apparently realizing his error, requested the court allow the complaint to conform to the evidence presented, which included facts relevant to the constructive fraud claim.[144]   The bankruptcy court, however, ruled against the trustee on the actual fraud claim and entered judgment for the defendants, concluding that it had no other option based upon the omission of the constructive fraud claim from the joint pre-trial statement.[145]   On appeal, the Panel found that the bankruptcy court erred by failing to consider the trustee's request under Fed. R. Civ. P. 15(b),[146] which allows for the amendment of pleadings to include issues not raised therein where those issues were tried either by implied or express

---

there was another explanation, but merely that "it is not beyond the realm of possibility that after hearing live testimony . . . the court would find that the injury (if one could be proven) was recklessly or negligently inflicted . . . ." Response at 10.

[141] *In re Byers*, 304 B.R. at 2.

[142] *Id.* at 3.

[143] *Id.* at 5-6.

[144] *Id.* at 3-4.

[145] *Id.* at 4.

[146] *See* Fed. R. Civ. P. 15, made applicable to adversary proceedings by Fed. R. Bankr. P. 7015.

consent of the parties.[147]   The Panel further recognized that while most courts give a very restrictive and binding effect to pre-trial orders under Fed. R. Civ. P. 16,[148] they must be construed in light of Fed. R. Civ. P. 15(b)'s explicit policy in favor of allowing amendments.[149]

As explained above, *Byers* stands for the proposition that the binding nature of a joint pre-trial statement does not preclude amendments made pursuant to Fed. R. Civ. P. 15(b) to include issues not previously raised when they are nonetheless tried by the parties.   In contrast, Attorney Baker sought to present evidence at trial contrary to the admissions contained within the Amended Joint Pre-Trial Statement.   That is simply not a permissible amendment under Fed. R. Civ. P. 15(b), and therefore, Attorney Baker's argument cannot be construed as one made in good faith for the modification or extension of existing law.   Moreover, this argument is nonsensical because admitted facts in joint pre-trial statements would be rendered meaningless if parties remained free to offer contradictory evidence at trial.

Lastly, Attorney Baker argues that the Amended Joint Pre-Trial Statement is internally contradictory because Cristina's attorney "admitted" that the following issue remained for trial: "Whether Alex's conduct set forth above constitutes 'willful and malicious injury' to Cristina resulting in a debt for personal injury which is non-dischargeable under §523(a)(6)."[150]   These contradictory "admissions," he contends, prove the existence of a trial-worthy issue of law.[151]   I

---

[147] *In re Byers*, 304 B.R. at 6 (*citing Invest Almaz v. Temple–Inland Forest Products Corp.*, 243 F.3d 57, 71 n. 19 (1st Cir.2001)).

[148] *See* Fed. R. Civ. P. 16, made applicable to adversary proceedings by Fed. R. Bankr. P. 7016.

[149] *In re Byers*, 304 B.R. at 7 n. 19.

[150] Response at 8; *see also* JPTS at ¶ 4:3.

[151] Notably, the only purpose served by pointing out that the Amended Joint Pre-Trial Statement was prepared by opposing counsel is to form the basis of this argument.  Putting substance aside for a moment, it is obvious that this

previously rejected this argument in *Anderson v. Richards*,[152] where I noted that disputed issues of fact or law set forth in a joint pre-trial statement pursuant to my pre-trial order do not constitute a stipulation that those issues or facts are actually subject to a bona fide dispute.[153] Instead, all they reflect are matters to which the parties do not agree and require judicial determination.[154] Effectively, the statement of "Issues of Law Remaining to be Litigated" in a joint pre-trial statement is what the plaintiff hopes the facts add up to and cannot be construed to undermine facts already admitted. By way of analogy, the parties gave me a pile of pieces (the admitted facts), but did not agree that I had all those needed to complete the puzzle (the stated issue).[155]

Under the totality of the circumstances, Attorney Baker's conduct with respect to the admissions was wholly unreasonable under any objective standard.[156] By advancing arguments

---

argument is nothing more than an opportunistic last ditch effort to retract the admissions. As discussed in footnote 131, *supra*, Attorney Baker had several options available to him if opposing counsel insisted on including non-admitted facts in the Amended Joint Pre-Trial Statement. It is incredible that he instead meant to rely on the disputed issue statement as a backdoor method of proving the admissions were not really admitted.

[152] *Anderson v. Richards (In re Anderson)*, No. 07-1328, 2009 WL 4840871 *2 (Bankr. D. Mass. Dec. 10, 2009).

[153] *Id.*

[154] *Id.*

[155] Here, the parties apparently agreed as to the underlying facts, as demonstrated by the admissions, but not whether they amounted to a non-dischargeable debt under 11 U.S.C. § 523(a)(6).

[156] Indeed, the District Court found:

> [The Debtor's] absurd assertion[s] that the admissions contained in the [Amended Joint Pre-Trial Statement] were insufficient grounds for summary judgment are so ridiculous that one can only imagine that they were made in bad faith. It boggles the mind to think that [the Debtor] could admit, as a fact not requiring proof, that he "intended to cause and did cause Cristina physical harm and pain," and then later argue that there were questions as to injury and intent precluding summary judgment. *If there was ever a case to impose sanctions, this would be the one*.

*In re Hermosilla*, 2011 WL 1100470 at *8 (emphasis added).

contrary to the admitted facts, his position was devoid of any basis in fact or law. Although I repeatedly asked Attorney Baker at the March 17, 2010 hearing how he intended to get around the admissions made in the Amended Joint Pre-Trial Statement, clearly putting him on notice of the central issue in this case, the Memorandum completely ignores the admissions and instead challenges the sufficiency of the complaint.[157]   Based upon the Response, Attorney Baker's position is, undoubtedly, that referencing the complaint rather than the Amended Joint Pre-Trial Statement was a distinction without a difference because the statements are the same. This argument is flawed and disingenuous because it effectively mis-characterizes the admissions as allegations.  Moreover, the Response's conjured basis for treating them as such is without any basis in law. Any reasonable inquiry into the *Byers* decision, by which I mean simply reading it, would clarify that its holding is grounded entirely in Fed. R. Civ. P. 15(b), which has absolutely no application here.[158]   Therefore, I find that Attorney Baker violated Fed. R. Bankr. P. 9011(b)(2) and (b)(3) by arguing contrary to the admitted facts of the Amended Joint Pre-Trial Statement.

### 3. Determination of Appropriate Sanctions under Fed. R. Bankr. P. 9011

"Once a court determines that a person violated Rule 9011(b), it may impose an 'appropriate sanction.'"[159]   The appropriateness of a sanction is judged by "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."[160]   The rule

---

[157] Trans. March 17, 2010 at 9:12-25; 10:1-15; 11:1-24; 12:7-25; 13:1-15; 17:1-25; 18:1-25; 19:1-7.

[158] Again, for this reason, his argument cannot be construed as one seeking, in good faith, a modification or extension of existing law.

[159] *In re CK Liquidation Corp.*, 321 B.R. at 366 (*quoting* Fed. R. Bankr. P. 9011(c)).

[160] Fed. R. Bankr. P. 9011(c)(2).

itself provides for a variety of options, including "directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."[161]  While the First Circuit has "eschew[ed] the imposition of rigid guidelines for the trial courts in this circumstance-specific area of the law,"[162] courts must consider a number of factors to craft an appropriate sanction, including: the good or bad faith of the offender; the degree of willfulness, negligence, or frivolousness involved in the offense; the knowledge and experience of the offender; any prior history of sanctionable conduct on the part of the offender; the impact of the sanction on the offender; the burden to the court system attributable to the misconduct; and the extent to which the offender persisted in advancing a position while on notice that the position was not well grounded in fact or warranted by existing law or a good faith argument for the extension or modification of existing law.[163] "[A] judge should take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms,"[164] but "[s]o long as the sanction selected is 'appropriate,' [the rules] place virtually no limits on judicial creativity."[165]

---

[161] *Id.*

[162] *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 395 (1st Cir. 1990).

[163] Section of Litig., A.B.A., *Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure*, 121 F.R.D. 101, 125 (1988).

[164] *Anderson v. Beatrice Foods Co.*, 900 F.2d at 395.

[165] *Id.* at 394.

According to the Court's own records, this is not the first time Attorney Baker has been sanctioned for violating Fed. R. Bankr. P. 9011.[166]   In fact, I previously imposed sanctions in amount of $1,585.70 against Attorney Baker in the Debtor's main case for filing a motion for sanctions that was "wholly without merit."[167]   Additionally, Judge Feeney of this district recently found that Attorney Baker violated Fed. R. Bankr. P. 9011 by filing a motion to approve a loan modification and arguing that there was an enforceable agreement despite the fact that the loan modification had not been executed by the mortgagee or its representative.[168]

I am particularly troubled by the egregiousness of the violations now before me.   As explained thoroughly above, both the Memorandum and the Response fell well below the standard of "due diligence and objective reasonableness" required by Fed. R. Bankr. P. 9011. Although any reasonable inquiry would have revealed his legal assertions, as well as his after the fact "supporting" contentions, as baseless, of greater concern are his arguments contrary to the admitted facts in the Amended Joint Pre-Trial Statement.   The Memorandum failed to even acknowledge the admissions as established facts, instead discussing them as unsupported allegations.   This is astonishing because the binding nature of those admissions was the topic of an extended colloquy at the March 17, 2010 hearing.   Even after having read the Response, I find

---

[166] I may take judicial notice of the Court's own records. *See Rodi v. Southern New England School of Law*, 389 F.3d at 18-19; *see also* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute that is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

[167] *In re Hermosilla*, 375 B.R. 20 (Bankr. D. Mass. 2007), *aff'd*, *Baker v. Kelleher (In re Hermosilla)*, No. 1:07-cv-12243-NMG, slip op. at 6 (D. Mass. Sept. 30, 2008) ("Because [the Debtor's] contention in his motion for sanctions was in direct conflict with [*In re*] *Hyde*[, 334 B.R. 506 (Bankr. D. Mass. 2005)] and the provision of 11 U.S.C. § 362(c)(1), the Bankruptcy Court was well within its discretion in imposing sanctions on [the Debtor's] counsel, Attorney Baker.").

[168] *See In re Nancy Paul*, No. 08-11627-JNF, Docket #310 (Bankr. D. Mass. Jan. 11, 2011).

his conduct does not evidence good faith, but a willful disregard to the established facts.[169]   That

disregard forced this Court to expend considerable resources needlessly on an otherwise

stipulated case.   Moreover, it generated an appeal and this remand, further protracting a fairly

simply nondischargeability proceeding in a five year old case.

When acting *sua sponte*, courts may only impose a monetary sanction in the form of a

penalty paid to the court.[170]   Courts must also consider the offender's ability to pay a monetary

sanction because Fed. R. Bankr. P. 9011 should not be used to cause an attorney's financial ruin

or drive them from the practice of law.[171]   The First Circuit has noted, however, that

> Inability to pay what the court would otherwise regard as an appropriate sanction
> should be treated as reasonably akin to an affirmative defense, with the burden
> upon the parties being sanctioned to come forward with evidence of their financial
> status.[172]

 "As an alternative to monetary sanctions, district courts may admonish or reprimand attorneys

who violate Rule 11 where such a course of action is appropriate."[173]

Attorney Baker did not assert an inability to pay in the Response, but raised the issue in

the Response to Fee Application, stating:

> The court should also take into consideration my ability to pay a sanction.   As this
> court is aware, I was gravely ill the last two months of 2009, confined to bed for

---

[169] *See In re Hermosilla*, 2011 WL 1100470 at *8 ([The Debtor's] absurd assertion[s] [sic] that the admissions . . .
were insufficient . . . are so ridiculous that one can only imagine that they were made in bad faith).

[170] Fed. R. Bankr. P. 9011(c)(2).

[171] *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 652 (7th Cir. 1992); *Robeson Defense Committee v. Britt (In re Kunstler)*, 914 F.2d 505, 524 (4th Cir. 1990); *White v. General Motors Corp.*, 908 F.2d 675, 685 (10th Cir. 1990).

[172] *Silva v. Witschen*, 19 F.3d 725, 733 n. 15 (1st Cir. 1994) (*quoting White v. General Motors Corp.*, 908 F.2d at
685).

[173] *Figueroa-Ruiz v. Alegria*, 905 F.2d 545, 549 (1st Cir. 1990); *see also Unanue-Casal v. Unanue-Casal*, 898 F.2d
839, 842 (1st Cir. 1990).

most of January, 2010, and only able to resume part-time work in my office (as opposed to working from home) at about the beginning of February, and more or less full time work in May, 2010.  What the court may not be aware of is that when I became ill, I had no medical insurance, coverage under COBRA from non-legal employment having expired about two weeks before I became ill. Fortunately, I qualified for MassHealth (also known as Medicaid), and continued to be qualified for free health care until February, 2011.  All of this resulted in a substantial loss of income in 2010.  While I have made considerable strides in recovering, financially, and could pay the $5,240.50 [that he would accept as the maximum reasonable fee incurred defending against the Appeal], anything greater would be a strain, at least at present, as I now have to pay my own health insurance premiums and prescription co-payments, and am still under the care of three doctors for conditions resulting from my illness.[174]

Attorney Baker further explained that he has resources in retirement accounts as well as a pending inheritance, but did not know the full extent of those resources nor their tax implications.[175]  The Response to Fee Application was not accompanied by an affidavit or any financial disclosures.

In the present case, I find the combination of both types of sanctions appropriate.  The publication of this Memorandum of Decision is critical for deterrence as it creates a record that may be considered by other courts in the event that Attorney Baker repeats such gross misconduct.[176]  Moreover, in light of the egregiousness of these violations, I find an additional monetary sanction is both necessary and appropriate.  This is particularly the true considering Attorney Baker was previously sanctioned $1,585.70 in this very case for filing a motion that was "wholly without merit" and that failed to deter him from committing the present misconduct. I am also mindful of the burden Attorney Baker placed on both opposing counsel and the Court

---

[174] Docket No. 160 at ¶¶ 15-16 (citations and footnote omitted).

[175] In particular, Attorney Baker indicated that drawing on his retirement accounts would result in tax liabilities and penalties that he feels he should not be forced to incur.  Docket No. 160 at n. 7.

[176] *See*, *e.g.*, *In re Iappini*, 192 B.R. 8, 10 (Bankr. D. Mass. 1995) (doubling prior sanction for each subsequent instance of similar conduct).

in this case.  Moreover, I am not persuaded that the sanction should not exceed $5,240.50 as Attorney Baker did not state unequivocally that he could not pay more or provide any evidence to that effect; only that more would be a "strain."  Indeed, that number is not tied to his financial ability, but is instead what he thought was a reasonable fee incurred by Attorney Brown defending against the Appeal.  More importantly though, given Attorney Baker's history of prior sanctionable conduct, I am concerned that a sanction of his choosing will not constitute an adequate deterrent.  For this reason, I find that a penalty paid to the Court in the amount of $9,000, or $3,000 for each violation of Fed. R. Bankr. P. 9011, is warranted in this case.

## V. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order finding that Cristina is entitled to attorney's fees in the amount of $15,306.25 as damages under Fed. R. Bankr. P. 8020 for the Appeal and, with respect to the order to show cause, imposing sanctions in the amount of $9,000 against Attorney Baker, payable to the Clerk of Court, for violations of Fed. R. Bankr. P. 9011.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: June 1, 2011

45